[No. 19446.    Department Two.    January 8, 1926.]

PAUL RAPAPORT, *Respondent,* v. AMERICAN CENTRAL INSURANCE COMPANY, *Appellant.*[1]

[1] INSURANCE (49-1) — THE CONTRACT — DESCRIPTION OF RISK — "STOLEN" PROPERTY. The evidence is insufficient to sustain findings that an automobile had been "stolen," within the provisions of a theft insurance policy, where it was openly taken out by a discharged employee of the owner, as had been his custom theretofore, in the presence of a man who was in charge of the garage where it was stored, evidently merely for a "joy ride," and was not returned because it met with an accident and was ditched and there abandoned.

Appeal from a judgment of the superior court for King county, Hall, J., entered January 31, 1925, upon findings in favor of plaintiff, in an action on a policy of automobile insurance, tried to the court. Reversed.

*Hugh M. Caldwell,* for appellant.

*Shorett, McLaren & Shorett,* for respondent.

*Reported in 242 Pac. 40.

MAIN, J.—This action was brought to recover damages to an automobile which, the plaintiff claims, were caused after it had been stolen. The defendant denied liability. The cause was tried to the court without a jury, and resulted in findings of fact and conclusions of law sustaining the right of recovery, and a judgment was entered in favor of the plaintiff in the sum of $275. From this judgment the defendant appeals.

The facts essential to be stated, for the purpose of presenting the controlling question, are as follows: The respondent was the owner of a Studebaker automobile. The appellant had issued a policy of insurance covering the automobile against theft. Peter Jones owned and operated a public garage in the city of Seattle. The car was kept in this garage. The respondent used the car but little, and it was most largely used by his wife. When Mrs. Rapaport desired to use the car, she would telephone the garage and the car with a driver would be sent to her. About the garage there were a number of young men, or "boys" as they are referred to in the evidence, who were not regularly employed there; but, when extra drivers were needed, were sent out from time to time, and occasionally were employed on odd jobs in the garage. For two or three weeks at least prior to June 30, 1923, one Wheeler had been driving for Mrs. Rapaport. On the 29th of June, he drove the car for her for a number of hours, and when he returned it was understood between him and the respondent that he was to be paid in full, which was done, and that he was not to drive any more. There is a controversy over this matter of Wheeler's discharge in the evidence, but, for the purposes of this case, we accept the respondent's version of it.

On the night of June 30, at about 11:30, Wheeler, without right or authority, took the car out and took

with him William Gaddy and three others, who apparently were picked up at the garage. At the time the car was taken, Orville Jones, the son of the proprietor, was present and another employee of the garage. Both Orville Jones and his father testified that it had been customary for them to allow the car to go out of the garage whenever Wheeler desired to take it and that he had done so on a number of occasions. After the car was taken on this night, as testified by Gaddy, one of its occupants, they started for no place in particular. They went out the boulevard to the Renton road and on to the Swan Lake road. They intended to drive the car back to Pete's Garage at the end of the ride, and they were on their way back when the accident which caused the damage to the car occurred. The car went into the ditch, turned over, and was considerably damaged. This was about 2:30 a. m., July 1, 1923. The occupants of the car left it in the ditch. On the following day, some one telephoned the sheriff's office that the wrecked car was in the ditch. A deputy sheriff went out, caused it to be towed to a barn nearby and, upon his return to the city, from the license number located the respondent as owner. Two or three days later, Wheeler, Gaddy and one other went out to where the car was stored, paid the storage cost and the cost of towing, and brought the car back to Pete's Garage under its own power. They then negotiated with a repair shop for the repairing of the car, and repairs had actually been started when they were stopped, either by the respondent or Mrs. Rapaport. The respondent gave notice to the insurance company, subsequently caused the car to be repaired, and presented a statement to the company for the cost, which the company declined to pay. The present action was brought, and resulted as above stated.

[1]   The controlling question is, whether there was a theft of the car.   In other words, when it was taken from the garage on the night of June 30, whether there was an intention on Wheeler's part to steal it, that is, not to return it to the garage.

If there is any evidence to justify a finding of theft, it must be by reason of a presumption arising from its taking without the consent or permission of the respondent or his wife.   Had the car been secretly taken without the knowledge or consent of the one in charge of the garage at the time, and without the knowledge and consent of the respondent or his wife, it may be conceded that such a presumption would arise.

In the case of *Valley Mercantile Co. v. St. Paul Fire & Marine Ins. Co.*, 49 Mont. 430, 143 Pac. 559, an automobile was taken from a repair shop, at about 5:30 o'clock in the evening, by two of the employees, after the proprietor had departed from the shop and locked the front door of the shop.   When it was taken, they could be seen by the employees of a nearby laundry, but at a time when the owner of the shop and the owners of the car would not likely see them.   After driving the car for a while, an accident occurred and the car was damaged.   The insurance company rejected the claim.   An action was brought, the cause was tried to a jury, and a verdict returned in favor of the plaintiff. The supreme court of Montana, in that case, held that there was not sufficient evidence to take the question to the jury.   After reviewing some authorities which hold, as is the general rule, that every taking by one person of the personal property of another without his consent is not larceny, but that in order to constitute larceny there must be an intent to deprive another, not temporarily, but permanently of his property, and to convert it to the taker's use without the consent of such owner, it was said:

"Considered in the light of these rules, the facts stated do not warrant the inference that the car in question was taken by Le Vasseur and Ellis with the criminal intent to deprive the owners of it permanently, and therefore the car was not stolen, and this case does not come within the provision of the insurance policy referred to above."

The facts attendant upon the manner of the taking of the car now in question are not as strong as were the facts in that case. Here, the car was taken in the presence of the son of the proprietor of the garage, who was in charge at that time. There, it was taken at a time when the owner of the shop and the proprietor of the car would not likely see the takers. In that case, it is true, that immediately after the accident those having taken the car caused it to be taken to a garage for repairs. Here that was not done immediately, but was within a few days. In addition to this, that case was tried to a jury while the present case was tried to the court. This is not a case where the court has passed upon conflicting evidence and has made a finding, but is a case where the question is, what is the proper inference to be drawn from the undisputed facts. The conclusion seems irresistible that Wheeler took the car simply for a "joy ride," with the intention of returning it to the garage and with no intention of depriving the owner of his property. The cases of *Price v. Royal Insurance Co.*, 119 Wash. 93, 204 Pac. 803, 24 A. L. R. 731; *Wieson v. Automobile Ins. Co.*, 126 Atl. (N. J. L.) 652, and *Weir v. Central Nat. Fire Ins. Co.*, 194 Iowa 446, 189 N. W. 794, cited by the respondent, are all jury cases. In each of these it was held that the facts were sufficient to sustain the verdict, that is, that the jury in each of the cases had a right to draw the inference that the car had been stolen.

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

TOLMAN, C. J., MITCHELL, MACKINTOSH, and PARKER, JJ., concur.