**HOYNE, Plaintiff-Appellee, v. BUCKEYE UNION CASUALTY COMPANY, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1737.   Decided March 16, 1943.

Cowden, Cowden & Crew, Dayton, for plaintiff-appellee. Thomas, Hyers & Leyland, Dayton, for defendant-appellant.

## OPINION

By GEIGER, J:

This matter is before this Court on appeal from a judgment of the Court of Common Pleas of Montgomery County reversing a judgment rendered by the Municipal Court of the City of Dayton. The action was tried without the intervention of a jury and upon an agreed statement of facts. The Municipal Court found against the plaintiff and for the defendant. Thereupon the defendant appealed to the Common Pleas Court of Montgomery County, which Court reversed the finding of the Municipal Court, and the cause was appealed to this Court. This Court found that there was no final judgment in the Municipal Court and that consequently there was no valid appeal, and remanded the case to the Municipal Court for further proceeding. Thereupon the Municipal Court entered final judgment in compliance with its former finding and the case was again appealed to the Court of Common Pleas of Montgomery County where a different Judge from the one considering the first appeal heard the case and followed the decision of the Judge first hearing the appeal and reversed the judgment of the Municipal Court. The matter is now before us on appeal from this judgment.

The statement of the plaintiff filed in the Municipal Court was to the effect that the defendant on the payment of proper premium issued a policy of insurance covering various automobiles owned by the plaintiff and insuring plaintiff against various losses including loss resulting from "theft, robbery and pilferage". It is alleged that on the 29th day of July, 1936, plaintiff's Cadillac invalid car covered by the insurance was unlawfully and without plaintiff's knowledge or consent taken from the possession of the plaintiff and that before the plaintiff recovered possession of the same and

while it was unlawfully and without his consent out of the control of the plaintiff, it was damaged as the result of the unlawful taking of the same from the possession and control of the plaintiff, "which constitutes a theft under the terms of the policy"; that the automobile was damaged in the sum of $512.00 for which judgment was prayed.

As a statement of defense the insurance company denies all allegations not specifically admitted and particularly denies that there has been a theft, robbery or pilferage of plaintiff's car so as to entitle plaintiff to the benefit of the policy.

The agreed statement of facts may be summarized to the effect that the plaintiff conducted the business of a funeral home; that the defendant, the Casualty Company, issued its policy of insurance covering various automobiles owned by the plaintiff, insuring against various losses, including "loss resulting from theft, robbery and pilferage"; that on the 29th of July, 1936, Robert Lyons, a fifteen year old boy, entered the plaintiff's office and while there heard the telephone ring, and there being no other person in said office answered the 'phone. The call was from the International Envelope Company, requesting an ambulance for an emergency case. Thereupon Lyons took the keys for the plaintiff's invalid car and drove the car from the garage and to the International Envelope Company, where the emergency patient was placed in the car. Lyons then proceeded to operate said car toward the Miami Valley Hospital, presumably for the benefit of the injured workman. On this journey he lost control of the car and ran into a safety beacon, thereby damaging the car necessitating the expenditure of $512.00 for repairs; that said Lyons operated said car without the knowledge and consent of the plaintiff and without the knowledge and consent of any of plaintiff's employees; that at the time he was not employed by the plaintiff, nor had he at any time previously operated motor vehicles belonging to the plaintiff. By reason of his being acquainted with various employees and with the plaintiff's son, Lyons would from time to time visit plaintiff's place of business, but had no particular reason to be there on the day in question.

The defendant denies that there has been any theft, robbery or pilferage of plaintiff's car as would entitle the plaintiff to the benefits of the insurance policy.

The insurance policy provides coverage and designates the annual premium for each character of coverage. Paragraph E covers insurance for "theft, robbery and pilferage", the premium therefor being $6.30. The limit of liability with

respect to certain coverages, including that now in question, is the actual cash value of the property insured, destroyed or stolen, or of the cost of suitable repairs.

While the insurance is for loss resulting from theft, robbery and pilferage, only the coverage as a result of "theft" is now under consideration.

In searching for a statutory definition of "theft" we find none except so far as it may be inferred from §12447 GC, under the subhead "theft" and defining "larceny". This section provides:

"Whoever steals anything of value is guilty of larceny."

We again find that there is a dearth of statutory definitions of the term "steal". Under the statute defining "burglary", §12437 GC., it is provided that whoever, with the intent to "steal" property of any value, * * * shall be punished, etc. Here again there is no definition of what is meant by the word "steal".

In the case of **Royal Insurance Company v Jack, 113 Oh St., 153**, it is held in the first syllabus that,

"A policy of insurance was issued, indemnifying the owner of an automobile against loss by 'theft, robbery, and pilferage'. In considering the term 'theft' it should be given the usual meaning and understanding employed by persons in the ordinary walks of life." •

In Words and Phrases, Permanent Edition 40 at page 129, under the word "stealing" will be found a cross reference to "larceny" with still no definition of the word "stealing" or "theft".

In Ruling Case Law, Vol. 26, p. 725, under the heading "Theft" is the notation, "See Larceny, Vol. 17, p. 1."

In Corpus Juris 62, p 889, is the statement under the word "Theft", "A popular name, or term for 'larceny' or 'stealing' ".

In the case of Insurance Company v Jack, Jones, J., on page 160, states in considering the two words, "theft" and "larceny", "nor can it be said that the Legislature contemplated that there was any difference between the two terms".

In the codification of laws pertaining to offenses against property the sections defining "larceny" are immediately following under the sub-title "Theft".

Webster's Dictionary defines "theft" as the felonious taking of personal property with intent to deprive the rightful owner of it, larceny. The same authority defines "stealing"—"to take and carry away feloniously; to take without right or leave, and with intent to keep wrongfully; as to steal the personal goods of another."

In 8 Ohio Digest, p 2, under the general chapter, "Larceny", is defined as "taking and removing with intent to steal personal property of another without force or intimidation or any false personation or pretense". Larceny is there defined as "the felonious taking and carrying away of the personal property of another". Where the owner voluntarily transfers not the possession merely but also the title of the property when induced by fraudulent pretenses, the offense is not larceny but obtaining property by false pretenses. In larceny there must be a felonious taking.

We think we may safely conclude that the word "theft" is used synonymously with "larceny", although there are certain cases which hold that "theft" is a broader term than "larceny", and may included not only an unlawful taking of property but unlawful deprivation thereof. **American Mutual Indemnity Company v Meyer, 18 Oh App., 97.** This latter case requires a special examination which will be afforded later.

In Words and Phrases, Permanent Edition, Vol. 24, p. 199, et seq., may be found many definitions of "larceny". "Larceny" is the felonious taking of the property of another.

Taking with felonious intent is decisive as to "larceny".

Intent to steal is an essential element.

The taking must be done with felonious intent.

" 'Larceny' is predicated on the wrongful taking of property with intent to convert it."

Felonious taking, which involves intent to **steal**, is one of the material ingredients of the offense of larceny.

To constitute the crime of "larceny", the intent to steal must exist at the time of the taking.

The gist of common-law larceny is the felonious taking of what is another's, with the simultaneous intent in the taker of misappropriating it.

"To constitute larceny, it must be shown that the property was taken and carried way with the specific felonious intent to steal it. State v Kavanaugh, 53 A. 335."

"It is insufficient to constitute 'larceny' that the taking was without color of right or authority, but it must have been with a felonious intent. State v Peterson, 92 P. 302".

It is unnecessary to further define "larceny" as interpreted by the Courts.

In 46 Amer. Law Rep. Annotated, p. 535, 536, defining the meaning of "theft, robbery or pilferage" as used in the policy, it is held that no recovery can be had under such policy where there was no intent to steal the car by one who took it. Citing a large number of cases.

In Miller v Phoenix, 221 Ill. App., 75, it is held that there was no theft where an employee of a public garage in which the car was kept took it without the consent of the insured and went for a pleasure drive with some friends with no intent of depriving the insured of the car.

See Rapaport v The American Cent. Ins. Co., 242 Pac. 40.

The words "theft, robbery or pilferage" used in automobile policy as descriptive of perils insured against are to be given the meaning attributed to them in common use. Bloom v Ohio Farmer Insurance Co. (Mass.) 152 N. E. 345.

" 'Theft' under contract of automobile insurance is theft as common thought and common speech would now imagine and describe it."

In considering the term "theft" as used in a policy of insurance indemnifying the owner of an automobile against loss by theft, robbery and pilferage, it should be given the usual meaning and understanding employed by persons in the ordinary walks of life. Referring to **Insurance Co. v Jack, 113 Oh St, 156,** heretofore alluded to.

In the case of the **Great American Mutual Indemnity Co. v Meyer, 18 Oh App., 97,** decision by Mauck, J., whom lawyers remember as a Judge of great learning, it is held that the word "theft" is a broader term than "larceny" and may include not only the unlawful taking of property, but other unlawful deprivation thereof. In that case the son of the owner turned over to a companion his father's car with the instruction to return it to its parking place. This his companion failed to do and neither he nor the car were ever afterwards discovered. The Court held in that case that the owner could recover on a policy of insurance identical with the one now

under examination. It was clear in that case that there was an intention upon the part of the person stealing the car to do so, and that he took the same with felonious intent. The case, however, displays such learning that it should be read carefully and would be of great influence with us were it not for the fact that in June, 1925, six months after the announcement of the Meyer's decision by Judge Mauck the Supreme Court in the case of Insurance Company v Jack, supra, held that, "in construing the term 'theft' it should be given the usual meaning and understanding employed by persons in the ordinary walks of life". Under the decisions we have cited, to constitute the crime of larceny, there must be an original, felonious intent, general or specific at the time of the taking.

Coming now to apply these legal principles both in the definition of the word "theft" and also in the interpretation of insurance policies, with the exception of the decision by Mauck, J., which is outdated, we consider the action of the young boy. He was a friend of the owner of the property and often went to the office of the undertaker. While there alone, the telephone rang, and there being no other person there, he answered. It was a message for an ambulance to haul an injured workman to the hospital. He took the key from the hook, backed the car out and went directly to the place where the injured workman was and he was loaded into the invalid car. From there the boy proceeded toward the hospital and the damage occurred. By no stretch of the imagination can we say that this boy had any intent to steal that car. In the first place, it is quite obvious that he was a friend of the proprietor, frequently visiting the place; that if he had any intent of stealing a car, he certainly would not have stolen a Cadillac invalid car, one whose identity could not be concealed and whose usefulness to the boy would be absolutely nil. It must occur to any one reading the record in this case that the boy, without giving the matter proper thought, sought to respond to a call for aid and he availed himself of that. which the undertaker had provided for just such an emergency. Had the boy been able to drive the car to the hospital, he would have been congratulated upon his thoughtfulness and his inclination to serve an injured individual. Had he been arrested for stealing the car, we can not imagine that any jury would ever convict him under the evidence in this case. It is a hardship upon the owner of the car to lose the protection of an insurance policy for which he had paid. However, had he been more careful in the selection of the policy he would

have discovered that there was a statute particularly pertinent to the protection he was seeking. **Sec. 12619 GC,** relates to the taking or operating of a motor vehicle without the owner's consent, and provides, whoever steals any motor vehicle or "whoever purposely takes, drives or operates any motor vehicle without the consent of the owner thereof, * * shall be punished as therein provided."

The three words appearing in this policy, "theft, robbery and pilferage" have been in use for many years and there have been many decisions holding that there must be a felonious intent in taking a car before the provision of that policy would protect the owner. It would be quite easy for the insurance company and the owner of the car to add as a protection the coverage of the operation of a motor car without the owner's consent. Had this been in the policy there would have been no difficulty about the solution of this matter, as the greatest offense of the boy was operating the car without the owner's consent. However, this provision was not in the policy. We are, therefore, forced to the conclusion that there was no coverage under the policy and the agreed statement of facts.

Judgment of the Court of Common Pleas reversed and cause remanded to the Municipal Court for proceedings in accordance with this judgment.

BARNES, P. J., and HORNBECK, J., concur.