[Civ. No. 6832. First Appellate District, Division One.—September 15, 1930.]

EARL GRANGER, Respondent, v. NEW JERSEY INSURANCE COMPANY (a Corporation), Appellant.

Charles W. Haswell for Appellant.

Louis Oneal and William F. James for Respondent.

TYLER, P. J.—Action on an automobile insurance policy. The policy was issued by defendant company for the benefit of plaintiff and other beneficiaries named therein. It was one in the form universally in use by automobile dealers who insert in their policies for convenience the names of different finance companies or concerns through which they do their financing. The policy, among other things, insured the beneficiaries named therein against theft, robbery or pilferage, except by any person in the assured's household or in their service or employ, and excepting also the wrongful conversion, embezzlement or secretion by a mortgagor or vendee in possession under mortgage, conditional sale or lease agreement. While the policy was in full force and effect the plaintiff, respondent herein, was conducting a motor-car sales agency in the city of San Jose, and among the cars he was offering for sale was a certain Willys-Knight sedan, which was covered by the policy of insurance here sued upon. On July 31, 1927, a man giving the name of M. D. Ritchie, a stranger to respondent, came into his place of business and approached the salesman on duty, with the request that he be permitted to inspect the automobiles on display with a view of purchasing one. He gave the salesman his supposed name and a fictitious address in San Francisco. While inspecting the cars the prospective purchaser was informed by the salesman that it was his lunch hour and he requested the customer to remain in the premises for a short time, after which he promised to take him for a ride for the purpose of demonstrating the merits of the sedan. Upon the salesman's return from lunch the parties proceeded to the door of the establishment and were about to enter the car when another party who had a previous appointment with the salesman arrived. The prospective purchaser was then re-

quested by the salesman to drive the car around the block while he was interviewing the new arrival. Shortly thereafter, when the salesman finished his business, he turned to look for the stranger, but found he had disappeared. Upon inquiry being made, it transpired that the address given to the salesman was fictitious and the impostor and the car were thereafter seen no more. Suit was brought by plaintiff upon the bond and he recovered judgment in the sum of $1396.32. Two questions are here presented which it is claimed compel a reversal of the judgment: (1) The proper construction and application of the contract of insurance; (2) nonjoinder of proper parties as plaintiffs.

The present statute of this state in its definition of theft, includes what formerly constituted the several crimes of larceny and embezzlement. This statute, however, was enacted subsequent to the issuance of this policy and in so far as its determinative effect upon the definition to be given to the word "theft" in the policy, would not be effective, as the statute can have no retroactive operation. At the time the policy was issued, there was no such crime or offense under the penal statutes as "theft." There was larceny, larceny by trick and device and embezzlement. Notwithstanding this fact, we are of the opinion that it was the intention of the parties that the policy should cover such an act as the facts in this case present, and also, for other reasons, the judgment must be affirmed.

In interpreting a contract, language is to be given the meaning which the one using it apprehended or should have apprehended that the other party would give to it. The common or normal meaning of language will be given to the words employed unless the circumstances show that in a particular case a special meaning should be attached to them. Then again, in construing a writing, all parts are to be considered with reference to each other, and in the case of a contract of insurance, the contract is to be interpreted in the light of its nature in view of its purpose as such, and with a considerable degree of liberality in favor of the insured and against the insurer by reason of it having framed the contract. A risk fairly within contemplation is not to be avoided by any nice distinction or artificial refinement in the use of words. (*Mitchell Grain & Supply Co.* v. *Casualty Co.,* 108 Kan. 379 [16 A. L. R. 1488, 195

Pac. 978].) ▮ Here the policy insures against "theft, robbery or pilferage" and then proceeds to except from its operation the wrongful conversion, embezzlement or secretion by a mortgagor, vendee in possession under a mortgage, conditional sale or lease agreement. This cause does not except wrongful conversion by any other persons than those named therein. It seems clear that wrongful conversion, embezzlement or secretion being excepted as to a certain class only, it is restricted to that class alone and the insured is protected under the policy from such acts on the part of others within the terms employed in the policy. We are of the opinion, therefore, that the policy, under a reasonable construction of its terms, not only insures against loss by theft, or other form of larceny, but likewise includes a loss by embezzlement, except as to a limited class. ▮ Aside from this conclusion, it has been generally held that the words "theft," "robbery" and "pilferage" are words that are well understood and that they are used in insurance policies in their common and ordinary meaning. (*Royal Ins. Co.* v. *Jack*, 113 Ohio St. 153 [46 A. L. R. 529, 148 N. E. 923].) Theft involves the idea of a knowingly unlawful acquisition of property; that is, a felonious taking of it from one who has both the actual possession and the apparent right of possession. (*Stewart* v. *Home Fire & Marine Ins. Co.*, 2 N. J. Misc. Rep. 515 [124 Atl. 773].) In construing the word "theft" it should be given the usual meaning and understanding employed by persons in the ordinary walks of life, and should be construed as common thought and common speech now imagine and describe it. (*Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303 [38 A. L. R. 1115, 146 N. E. 432].) Pilferage has but one meaning and it constitutes some form of stealing. (*Felger* v. *Home Ins. Co.*, 207 Ill. App. 492; *Illinois Express Co.* v. *Southern Motor Sales Co.*, 207 Ala. 265 [24 A. L. R. 734, 207 Atl. 265]; *Gunn* v. *Globe Ins. Co.*, 24 Ga. App. 615 [101 S. E. 691]; *Darling* v. *Clement*, 69 Vt. 292 [37 Atl. 779].) The words employed, therefore, must be deemed to have been used in their general and popular sense rather than with specific reference to the precise definition of a criminal statute. (*Hill-Howard Motor Co.* v. *North River Ins. Co.*, 111 Kan. 225 [24 A. L. R. 736, 207 Pac. 205].) It may well be that in

a prosecution for a crime, the strict rules of criminal law would require the swindler to be charged with the particular crime that the facts constitute, but it cannot be said that the contract of insurance was drawn to fit the narrow limitations of criminal statutes. As above expressed, the bond is to be interpreted as a contract of insurance in view of its purpose as such. (*Mitchell Grain & Supply Co.* v. *Casualty Co.*, *supra; Van Vechten* v. *American Eagle Fire Ins. Co.*, *supra; Insurance Co. of North America* v. *Samuels*, 31 Ga. App. 258 [120 S. E. 444].) ■ It has been directly held that where, as here, one represents himself as a prospective purchaser and induces an agent to part with a car upon the pretext that he desires to try it out and never returns it that the transaction constitutes theft within the meaning of the policy. (*Champion* v. *Chicago Fire & Marine Ins. Co.*, 104 N. J. L. 554 [141 Atl. 794] ; *Automobile Underwriters' Co.* v. *Rhinehold*, (Tex. Civ. App.) 255 S. W. 1116; *Federal Ins. Co.* v. *Hiter*, 164 Ky. 743 [L. R. A. 1915E, 575, 176 S. W. 210] ; *Southern Casualty Co.* v. *Landry*, (Tex. Civ. App.) 266 S. W. 804.) Whether, therefore, the offense constituted larceny or embezzlement is of no consequence, as either offense constitutes "theft" within the meaning of the policy.

We are cited to the case of *Fiske* v. *Niagara Fire Ins. Co.*,* (Cal. App.) 266 Pac. 853, as opposing this conclusion. In that case there was an actual sale and an actual transfer of title and a subsequent conversion. It has been expressly held that where one permits another to take his car for the purpose of trying it out, the question of sale to be determined afterward, and such person never returns it, such transaction does not constitute a conditional sale and the insurance company is not relieved of liability by a clause in the policy exonerating the company from liability in case of theft while the car was in the possession of a vendee under a conditional sale. Such taking was held to be theft by the bailee. (*Southern Casualty Co.* v. *Landry*, *supra*.)

Aside from these considerations, we are of the further opinion that the facts show a larceny rather than an em-

---

*Reporter's Note.—The Supreme Court granted a hearing in the case of *Fiske* v. *Niagara Fire Ins. Co.*, on June 14, 1928, and the opinion of the Supreme Court is reported in 207 Cal. 355 [278 Pac. 861].

bezzlement as claimed by appellant. The prevailing rule is that any scheme, whether involving false pretenses or other fraudulent trick or device whereby an owner of property is swindled out of it with the preconceived intent of the swindler to unlawfully possess it, is classed as larceny. The natural and obvious meaning of the word "steal" is a felonious taking of property. (*Darling* v. *Clement*, 69 Vt. 292 [37 Atl. 779].) The words "theft," "robbery" and "pilferage" all describe some form of larceny. (*Ledowka* v. *Home Ins. Co.*, 139 Md. 434 [19 A. L. R. 167, 115 Atl. 596].) ■ The fundamental proposition that there can be no larceny by one who has already a rightful possession before conceiving a fraudulent intent serves as a line of distinction between larceny and embezzlement. In other words, in embezzlement there is a rightful taking and a subsequent unlawful appropriation. In larceny the *animus furandi* exists at the very time of the taking. ■ So where property delivered by the owner to another for a purpose not involving transfer of title, is by the person to whom it is delivered, in violation of the trust reposed in him, appropriated to his own use, it is larceny and not embezzlement where he intends at the time of receiving it to convert it to his own use in violation of the trust, for the reason that his fraudulent purpose prevents the possession which is given to him from being lawful. (1 McClain on Criminal Law, sec. 623.)

■ The facts as above narrated conclusively show that here the swindler had formed a guilty intent to obtain possession of the automobile at or before the time he unlawfully acquired it and that his possession at all times was unlawful. He gave a fictitious name and address and did other acts which plainly showed his guilty intent to acquire the car. His act, therefore, constituted larceny, which crime constitutes "theft" within the meaning of the bond. (*Security Ins. Co.* v. *Sellars-Sammons-Signor Co.*, (Tex. Civ. App.) 235 S. W. 617; *Brady* v. *Norwich Union Fire Ins. Co.*, 47 R. I. 416 [133 Atl. 799]; *People* v. *Salorse*, 62 Cal. 139.) ■ Nor is there any merit in appellant's further claim that there was prejudicial error on account of the nonjoinder of the other beneficiaries named in the policy. None of them ever had any interest in the car, but, on the contrary they have expressly disclaimed any interest,

and the time within which they might have asserted an interest has long since expired.

As above recited, the form of policy was one universally in use by automobile dealers who have inserted in their policies the name of different finance companies or concerns which do their financing. Under no circumstances can the defendant be subjected to any further claim growing out of the transaction. Under these facts the question of whether the other beneficiaries named should have been made parties becomes immaterial, as defendant was in no manner prejudiced by any ruling of the court upon this subject.

The judgment is affirmed.

Knight, J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal was denied by the Supreme Court on November 13, 1930.