81 N.J. Super. 383 (1963)
195 A.2d 653
EDGEWATER NATIONAL BANK, A BANKING CORPORATION, PLAINTIFF-RESPONDENT,
v.
SAFEGUARD INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1963.
Decided December 4, 1963.
*384 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Milton T. Lasher argued the cause for the plaintiff.
Mr. Marshall Selikoff argued the cause for the defendant (Messrs. Jung & Selikoff, attorneys).
*385 The opinion of the court was delivered by GAULKIN, S.J.A.D.
Plaintiff sued on a theft policy. The case was submitted to the Law Division upon a stipulation of facts. The court entered judgment for plaintiff and defendant appeals.
Plaintiff's brief sets forth the following summary of the stipulation, and defendant does not dispute its accuracy:
"Defendant, Safeguard, issued an automobile insurance policy covering a 1960 Rambler, naming the Romar Taxi Service, Inc. (hereafter Romar) as the insured, and recognizing the plaintiff, Edgewater, as holding an encumbrance thereon, and agreeing to insure it to the extent of its interest.
The policy contained the following provisions:
`Coverage D  Theft (Broad Form):
To pay for loss of or damage to the automobile, hereinafter called loss, caused by theft, larceny, robbery or pilferage.'
[Excluding]:
`* * * loss due to conversion, embezzlement or secretion by any person in possession of the automobile under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance.'
Romar's officers and stockholders were the following:
President: Robert Limburg  49 shares;
Vice-President: Margaret M. Limburg  2 shares;
Secretary and Treasurer: Harriet Limburg  49 shares.
The total shares of stock issued were 100.
Upon the application of Robert and Harriet Limburg, President and Secretary and Treasurer respectively, Edgewater loaned Romar $4,756.42 on November 29, 1960 to be repaid in installments * * *.
In consideration of the loan Romar issued its promissory note executed by Robert and Harriet Limburg, in their capacities as officers of the corporation and individually. Additionally, Romar executed [an] Agreement in consideration of the loan placing the 1960 Rambler and a 1955 Dodge as security. Robert and Harriet Limburg executed the * * * Agreement as corporate officers of Romar.
Robert Limburg operated the 1960 Rambler in the business of the corporation. Romar defaulted in the loan payment in May 1961 with no payments made thereafter. During the month of June 1961 Robert Limburg took the 1960 Rambler and has not returned to New Jersey, being last seen in Texas. The Rambler at the time of taking was worth $1450.00."
Defendant's appeal is based upon two propositions. The first is that this was not theft, larceny or pilferage within the meaning of the policy. The second is that since Limburg was *386 president and a half-owner of the corporation and personally endorsed Romar's note to plaintiff, he was a "person in possession of the automobile under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance."
Defendant's argument that this was not "theft" within the meaning of the policy is predicated upon certain language contained in Stewart v. Home Fire & Marine Ins. Co. of California, 124 A. 773, 2 N.J. Misc. 515 (Sup. Ct. 1924). However, that case has no bearing on the case at bar, for its facts are completely different from those before us.
In that case Stewart was the conditional vendor and Straus the conditional vendee of a certain automobile. The policy was issued in the name of both, as their respective interests might appear, insuring them against "theft, robbery or pilferage, excepting, however, the wrongful conversion or embezzlement by the vendee in possession under a conditional sale agreement."
The conditional sale contract forbade Straus from selling the car without Stewart's permission. Nevertheless, Straus sold it to one Schane. When Stewart learned of this, he demanded the car of Schane, who, after some delay, delivered it to Stewart. Stewart nevertheless sued the insurance company, claiming that these facts demonstrated a theft within the terms of the policy. The court held that it did not. It said that Schane had not stolen the car but had purchased it in good faith, "and, if it be assumed that the transaction involves criminality on the part of Straus, what he did amounted to an embezzlement, which is a fraudulent conversion of property by the possessor after its possession has been lawfully acquired * * *," excluded from coverage "by the excerpt from the policy which we have above recited, namely, that the embezzlement or secretion by the vendee in possession * * * shall not render the company liable under the clause of the policy insuring against theft."
Defendant seizes upon the statement in Stewart that "Theft, or larceny, involve[s] the idea of a knowingly unlawful acquisition of property; that is, a felonious taking of it *387 from one who has both the actual possession and the apparent right of possession." That is generally true, but it was said with reference to the facts and issues before the court in Stewart. Cf. State v. Trunfio, 58 N.J. Super. 445 (App. Div. 1959). The court did not undertake, in Stewart, to lay down a definition of theft intended to control future cases in which the facts were different.
Defendant argues that Limburg's taking of the car was not theft but embezzlement because Limburg had "rightful possession before conceiving a fraudulent intent," and the words "theft, larceny, robbery or pilferage" may not be construed to include embezzlement. Defendant says that the fraudulent taking of corporate property by an officer was embezzlement at common law, and today it is punished under chapter 102 of title 2A of our statutes, which deals with "Embezzlement, Conversion and Misappropriation." N.J.S. 2A:102-3.
The stipulation contains no facts which bring this case within the rationale of Miller & Dobrin Furniture Company, Inc. v. Camden Fire Insurance Company Association, 55 N.J. Super. 205 (Law Div. 1959), nor does defendant so claim. Therefore, insofar as the issues of this case are concerned, the relationship of Limburg to the insured car was the same as that of any employee who is placed in charge of a vehicle to be operated upon his employer's business.
It has often been said that an employee has custody of his employer's property, and not possession, and therefore his felonious taking may be larceny. 32 Am. Jur., Larceny § 56, p. 958; Gibson v. St. Paul Marine Fire Ins. Co., 117 W. Va. 156, 184 S.E. 562 (Sup. Ct. App. 1936); Henley v. State, 59 Ga. App. 595, 2 S.E.2d 139, 142 (Ct. App. 1939); McGraw v. State, 142 Tex. Cr. R. 432, 154 S.W.2d 645, 647 (Crim. App. 1941). However, we prefer not to base our decision on any such narrow ground.
To begin with, the policy does not exclude all conversions, embezzlements and secretions but only those by one "in possession under a bailment lease, conditional sale, purchase agreement or other encumbrance." Under well settled *388 rules governing the construction of contracts generally, and insurance contracts in particular, the insurance companies, having indicated which embezzlements are excluded, may be held to have agreed that all other embezzlements come within the term "theft," and are covered. Appleman says (5 Insurance Law & Practice, § 3212, p. 357 (1941)):
"And where a policy insures against theft, excepting from its operation loss of a certain type, such as embezzlement by mortgagor or vendee in possession, losses not falling within that specifically excepted class are covered so as to render the insurer liable for embezzlement by other persons."
See also 5A Am. Jur., Automobile Insurance, § 47, p. 50 (1956).
Limburg was not in possession under a bailment lease, conditional sale, purchase agreement or other encumbrance. Title to the car was in Romar, and the pledge of that title to plaintiff was by Romar. Limburg had no property right whatever in the car. The fact that Limburg endorsed Romar's note is immaterial. If Limburg did have "possession," rather than "custody," his possession was as an officer-employee of the corporation, and not by virtue of the contract between Romar and the plaintiff. Cf. General Public Loan Corp. v. Director of Division of Taxation, 13 N.J. 393 (1953); Hancock v. Board of Review, 46 N.J. Super. 418, 424 (App. Div. 1957).
The cardinal rule for the construction of insurance policies is that their language shall be read as they would be understood by members of the general public who purchase them. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 488 (1961); Tomaiuoli v. United States Fidelity and Guaranty Co., 75 N.J. Super. 192, 195 (App. Div. 1962). This is no new doctrine. In 1840 Justice Story said:
"If there be any commercial contract which, more than any other, requires the application of sound common sense and practical reasoning in the exposition of it, and in the uniformity of the application of rules to it, it is certainly a policy of insurance; for it deals with *389 the business and interests of common men, who are unused to deal with abstractions and refined distinctions." Peters v. Warren Ins. Co., 14 Pet. 99, 10 L.Ed. 371, 376 (1840).
See also Champion v. Chicago Fire & Marine Ins. Co., 104 N.J.L. 554, 556 (E. & A. 1928); Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App. D.C. 161, 117 F.2d 774, 133 A.L.R. 914 (1941), and the cases cited infra.
In Firemen's Fund Ins. Co. of San Francisco v. Boyd, 45 So.2d 499 (Fla. Sup. Ct. 1950), a truck driver absconded with his employer's truck. The court found it was a theft within the meaning of a policy such as we have here. Since excerpts from that opinion will make it unnecessary for us to say much more upon the subject, we quote from it at some length:
"* * * Some courts have stated that [theft] * * * means theft as common thought and common speech would now imagine it; that it should be given the usual meaning and understanding accorded it by persons in the ordinary walks of life. Bloom v. Ohio Farmers' Ins. Co., 255 Mass. 528, 152 N.E. 345; Granger v. New Jersey Ins. Co., 108 Cal. App. 290, 291 P. 698; Toms v. Hartford Fire Ins. Co., 146 Ohio St. 39, 63 N.E.2d 909; Mello v. Hamilton Fire Ins. Co., 71 R.I. 510, 47 A.2d 621.

* * * * * * * *
As stated in Toms v. Hartford Fire Ins. Co., supra [146 Ohio St. 39, 63 N.E.2d 911], `We think it may be accurately said that to "the man on the street" the word "theft" is of broader scope than "larceny" and comprehends essentially the willful taking or appropriation of one person's property by another wrongfully and without justification and with the design to hold or make use of such property in violation of the rights of the owner. In our opinion, where the word "theft" is used in an insurance policy, without definition, it should be interpreted as liberally as possible to protect the insured.'
* * * And where, as here, a policy under a theft provision described as `Broad Form' provides coverage for loss or damage due to `theft, larceny, robbery, or pilferage,' it requires no great liberality of construction to hold that the insurer intended to provide coverage for losses in addition to those which are, by strict common-law definition, larceny." 45 So.2d, at pp. 500-501.
See also Edwards v. Bromberg, 232 F.2d 107, 110, 62 A.L.R.2d 565 (5 Cir. 1956); Allen v. Berkshire Mutual Fire Ins. Co., 105 Vt. 471, 168 A. 698, 700, 89 A.L.R. 460 *390 (Vt. Sup. Ct. 1933); American Fire & Casualty Co. v. Barfield, 81 Ga. App. 887, 60 S.E.2d 383 (Ct. App. 1950). In Allen v. Berkshire Mutual Fire Ins. Co., supra, the court said:
"The defendant argues that `theft' means larceny, and that since the taking was by a bailee, there was no larceny because the bailee's possession was lawfully obtained and his felonious intent was formed after the delivery to him. But the word is to be given the meaning attributed to it in common use. Bloom v. Ohio Farmers' Ins. Co., 255 Mass. 528, 152 N.E. 345; Granger v. New Jersey Ins. Co., 108 Cal. App. 290, 291 P. 698, 700. `Theft' is a wider term than `larceny,' including other forms of wrongful deprivation of the property of another, and acts constituting embezzlement may properly be so called. 3 Bouv. Law Dict. (Rawles' 3rd revision) 3267, tit. `Theft.' As Chief Judge (now Mr. Justice) Cardozo says in Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 146 N.E. 432, 433, 38 A.L.R. 1115, 1116: `We assume that larceny by a bailee or a fiduciary would be theft within the policy, though at common law it would be classified under the heading of embezzlement. * * * The distinction, now largely obsolete, did not ever correspond to any essential difference in the character of the acts or in their effect upon the victim. The crimes are one to-day in the common speech of men as they are in moral quality.'" (at p. 700)
We hold that the word "theft" in the policy before us covers takings such as Limburg's, whether they be technically larceny or embezzlement. The judgment is affirmed.