138 N.J. Super. 125 (1975)
350 A.2d 285
JOHN W. RUDOLPH, ET AL., PLAINTIFF,
v.
THE HOME INDEMNITY COMPANY, A NEW YORK CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 4, 1975.
*127 Mr. Frank Cofone, Jr., for plaintiff (Messrs. Rafano and Wood, attorneys).
Mr. Sanford D. Kaplan for defendant (Messrs. Morgan, Melhuish, Monaghan, McCoid and Spielvogel, attorneys, Mr. Richard E. Arvidson, of counsel).
DIANA, J.C.C., Temporarily Assigned.
These are cross-motions for summary judgment. The facts are not in dispute.
In March 1973 plaintiff Thomas Rudolph advertised to sell his 1970 Chevrolet Corvette for $3,700. A person representing himself as "Bill Warren" answered the advertisement in person, offering to purchase the car for the sum of $3,600. Rudolph refused to reduce the price and "Warren" returned a few days later and presented a purported certified check on the Carteret Bank and Trust, payable to Rudolph in the sum of $3,700. Rudolph accepted and deposited the check in his account in the Somerset Hills and County Bank and signed and transferred the certificate of ownership to "Warren," who then left with the car.
A week later Rudolph was advised the check was a forgery and that the certification stamp it bore was false. Rudolph reported the incident to his insurance agent and the Franklin Township police. Investigation revealed that "Warren" had given a false address and that a person calling himself "Bill Weinler" and at times "Ron Warren" had previously acquired another vehicle by the same fraudulent device and had given the same false address as had "Warren." It was later discovered that "Warren" subsequently sold the Rudolph vehicle in Florida and that the person known as "Bill Warren" was currently in jail in Florida.
Defendant Home Indemnity Insurance Coverage, which had issued a family comprehensive automobile policy to the *128 father of Thomas Rudolph, denied coverage because the insured "voluntarily parted with his automobile for a monetary sum" and the policy coverage is limited to "theft or larceny."
The policy provides:

Coverage G. Theft
To pay for loss to the owned automobile or to a non-owner automobile caused by theft or larceny.

LOSS PAYABLE CLAUSE
Loss or damage, if any, under the policy shall be payable as interest may appear to the Lienholder named on the reverse side hereof and this insurance as to the interest of the Bailment Lessor, Conditional Vendor, Mortgagee or other secured party or Assignee of Bailment Lessor, Conditional Vendor, Mortgagee or other secured party therein called the Lienholder shall not be invalidated by any act or neglect of the Lessee, Mortgagor, Owner of the within described automobile or other Debtor nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by the Lessee, Mortgagor, Purchaser or other Debtor in possession of the property insured under a bailment lease, conditional sale, mortgage or other security agreement is not covered under such policy, unless specifically insured against and the premium paid therefor; and provided, also, that in case the Lessee, Mortgagor, Owner or other Debtor shall neglect to payany premium due under such policy the Lienholder shall, on demand, pay the same.
The company contends that, although Rudolph sustained a loss, the loss does not fall within the policy coverage. The company asserts that since Rudolph voluntarily surrendered both title and possession, neither a theft nor larceny took place in the legal sense.
The distinction defendant draws is that a theft or larceny occurs when legal title to the property remains in the owner after the wrongful taking, but where legal title (whether by fraud or false pretenses) is transferred to the wrongdoer, the wrongful taking is at most obtaining property by false pretense but not a theft or larceny.
The criminal statutes of New Jersey still retain distinctions between larceny, embezzlement and obtaining money by false pretenses.
*129 Pursuant to New Jersey statute, N.J.S.A. 2A:102-5, the intentional fraudulent appropriation of property or money of another into whose hands it has lawfully come or to whom it has been entrusted is an embezzlement. One of the essential elements of the crime is that the property must have been entrusted to the wrongdoer by virtue of a special relationship he holds to the property owner (i.e., as employee, agent consignee, factor, bailee, lodger or tenant).
N.J.S.A. 2A:111-1 renders criminal the obtaining of money or property of another by means of a false promise as writing with an intention not to perform when the promise or writing was given.
Larceny, by virtue of N.J.S.A. 2A:119-2, is the intentional unlawful taking of the property of another without such fear as is sufficient to constitute robbery. An unlawful taking is deemed to be a complete and independent possession and control of the property adverse to the rights of the owner.
Other than "theft of a trade secret," there is no specific statutory crime in New Jersey known as "theft," but the term is often considered a popular term for larceny and is used to describe any intentional unlawful taking of another's property.
It should be noted that the proposed New Jersey Code of Criminal Justice to a limited degree eliminates the distinction between embezzlement, larceny and false pretenses and designates these offenses as "Theft by unlawful taking or disposition" (2C:20-3) and "Theft by deception" (2C:20-4).
It is universally held that a policy insuring an automobile owner against loss from theft covers loss resulting from a taking which is shown to have all of the elements of common law larceny  that is, a felonious taking by trespass and carrying away of personal property without the owner's consent and with the felonious intent permanently to deprive the owner of the property and convert it to the use of the taker. There is, however, considerable lack of agreement on the question of whether theft coverage extends to *130 a loss suffered where the taking amounts to obtaining property by false pretenses, embezzlement or some other statutory crime. 48 A.L.R.2d 20 (1956).
I find no New Jersey case directly in point. In Champion v. Chicago Fire & Marine Ins. Co., 104 N.J.L. 554 (E. & A. 1928), the taker, representing that he sought to test drive a vehicle, presented a fraudulent check to the agent of the owner of the vehicle as security, obtained permission to test drive the car and absconded. The court determined that coverage existed under the facts of the case, designating conduct of the wrongdoer as "larceny" by virtue of the fact that the owner was induced to part with possession by trick or artifice but still retained title to the vehicle.
In Edgewater Nat'l Bank v. Safeguard Ins. Co., 81 N.J. Super. 383 (App. Div. 1963), the president and stockholder of a corporation which held title to a vehicle, absconded with the vehicle. The lienholder sought recovery under the corporation's insurance policy which afforded coverage for theft or larceny but excluded coverage for "conversion, embezzlement and secretion by one in possession under a bailment lease, conditional sales, purchase agreement or other encumbrance." The court determined that the insurer was obligated to afford coverage, resting its decision in part upon the fact that the absconding corporate officer was not "in possession under a bailment, lease, conditional sale, purchase agreement or other encumbrance." The court acknowledged that while as a general rule, theft or larceny involves the wrongful taking of property from one who has both possession and legal title, it refused to hold that, for the purposes of insurance coverage, the term "theft" is limited to situations where the property was in possession of the owner then wrongfully taken.
In both Champion and Edgewater the wrongdoer secured possession of the vehicle while the owner retained legal title. In Champion the wrongdoer secured possession by a fraudulent scheme, trick or artifice which the court characterized as *131 larceny. In Edgewater the wrongdoer's conduct was characterized as a theft although technically an embezzlement.
The facts of the instant case differ from both Champion and Edgewater to the extent that the wrongdoer by a preconceived fraudulent device secured both possession and a certificate of ownership from the lawful owner.
In neither the Champion case, the Edgewater case nor the instant case did the policy language limiting the coverage to theft or larceny expressly exclude from coverage the specific conduct of the wrongdoer in those cases.
The decisions in other jurisdictions provide some guidance. Courts in California, New York, the District of Columbia and Missouri have held that where, as a consequence of fraud, the title to an automobile insured against theft, is delivered by the insured to another, the loss suffered by the insured is not within the coverage afforded by the insurance. Fiske v. Niagara Fire Ins. Co., 207 Cal. 355, 278 P. 861 (Sup. Ct. 1929); Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 146 N.E. 432 (Ct. App. 1925). In those cases the conduct of the wrongdoer was designated by the court to be obtaining property by false pretense and not a "theft." The same result was reached by the court in Cox v. World Fire & Marine Ins. Co., Mo. App., 239 S.W.2d 538 (App. Ct. 1951) where the insurer surrendered title and possession of his vehicle to the wrongdoer, accepting in payment a forged check. The court held that the theft and larceny coverage of the policy extended only to taking by larceny as defined in the Missouri criminal statutes and the wrongful act was not a larceny as defined in said statute but was rather that of obtaining property by false pretenses.
In jurisdictions where the criminal statutes define the crime of obtaining personal property by false pretenses as "larceny," a loss to an insured from such a taking is within the coverage of an automobile theft policy. Central Surety Fire Corp. v. Williams, 213 Ark. 600, 211 S.W.2d 891 (Sup. Ct. 1948).
*132 Similarly, in jurisdictions, including New Jersey (Champion v. Chicago Fire & Marine Ins. Co., supra), where possession of (but not title to) an automobile insured against "theft" is obtained by fraud or false pretenses, the loss sustained by its insured as a result of the wrongful taking is considered as a larceny and determined to be within the coverage of the policy.
These decisions, while holding that obtaining possession of the property by fraud would constitute a larceny, imply that if both title and possession is secured by fraud, the wrongdoing is not a larceny or theft and is not covered by the policy.
In a limited number of decisions, the courts, apparently dissatisfied with the effect of the application of the criminal statutes in order to determine coverage resorted to a variety of reasons to afford coverage despite the apparent passage of title to the wrongdoer.
The Kansas Supreme Court in Hill v. North River Ins. Co., 111 Kan. 225, 207 P. 205 (1922), held that the insurer was entitled to recover for the loss of his auto under his policy insuring against "theft, robbery or pilferage," regardless of the fact that, under the criminal statutes of Kansas, the wrongdoing constituted the crime of obtaining money under false pretenses. The court noted that it could not find that the insurance contract was drawn to fit the narrow limitations of the Kansas Crime Act. Although the wrongdoer in fact secured title documents to the car, the court held that the insured never intended to part with title without full payment, which payment was never made nor intended to be made by the wrongdoer. The court applied the rule that any scheme, whether involving false pretenses or other fraudulent trick or device, whereby an owner of property is swindled out of it with a preconceived intent of the swindler not to pay for it, is classed as a larceny.
In Nugent v. Union Automobile Ins. Co., 140 Or. 61, 13 P. 2d 343 (Sup. Ct. 1932), the insured's agent transferred title and possession to the wrongdoer, who gave in payment what *133 was subsequently discovered to be a worthless check which the wrongdoer, an acknowledged swindler, knew to be worthless. The policy afforded coverage for the "theft, robbery or pilferage," but the carrier denied coverage, presumably on the theory that the wrongful act was not a "theft" since the wrongdoer secured both title and possession. The court held that the insured was entitled to recovery. The Oregon criminal statutes contained no crime specifically designated as "obtaining property by false pretenses." The court determined that title to the vehicle had not, in fact, passed to the wrongdoer since there was no "sale" by reason of the fact that the seller had not intended to sell the vehicle in exchange for a worthless check.
In Massachusetts Fire & Marine Ins. Co. v. Cagle, 214 Ark. 189, 214 S.W.2d 909 (Sup. Ct. 1948), the wrongdoer presented to the insured a worthless check, which he knew to be worthless, and secured title and possession after presenting as proof of his financial ability a falsified bank passbook. It was agreed by the parties to the transaction that title was not to pass until the check cleared. Although the check never cleared, the wrongdoer, by other deceptive devices, was able to secure new plates for the vehicle and absconded. The insurance company refused coverage, contending that the transaction was a conditional sale and the policy specifically excluded coverage for loss caused by "conversion, embezzlement or secretion by any person in lawful possession under a conditional sale." The court held coverage was afforded, finding that the wrongdoer, by reason of his preconceived fraudulent intent, came into possession unlawfully and that no "sale" ever took place.
One of the more recent cases where the court used language expressing dissatisfaction with a narrow application of criminal law to determine coverage is Munchick v. Fidelity & Casualty Co. of N.Y., 2 Ohio St.2d 303, 209 N.E.2d 167 (Sup. Ct. 1965), where the insureds had agreed to sell their car for cash and two autos. They transferred title to their car to the wrongdoers and accepted a check of $4,500, *134 pending delivery of the two autos. The wrongdoers subsequently sold the insureds' car but never delivered the two exchange vehicles and the $4,500 check previously given as security proved to be worthless. The policy in question covered theft and larceny. The wrongful conduct was classified by the court as "larceny by trick." The court held the term "theft," as used in the policy, included the transaction which caused the loss of the insurer's vehicle. After noting the public policy considerations that a contract of insurance is to be constructed liberally in favor of the insured, that any doubts arising from the language should be resolved in favor of the insured, and that the policy could have been so phrased to prevent any mistake as to its meaning, the court declared there was no reason to apply to the terms theft and larceny the narrow interpretation that might be given those terms in a criminal action. The court concluded that where the term "theft" is used but not defined in an insurance contract drafted by the insured, it includes any wrongful deprivation of the property of another without claim or color of right.
Each of these cases represents a reasoned approach to achieve a compromise between the legitimate expectations of the policy holder and the legitimate efforts of the insurance company to limit its exposure to only those risks it believed it had contracted to cover.
Appropriately, the procedure followed by the courts was to define or classify the wrongdoing giving rise to the loss and to apply the policy terms used to limit coverage to those classifications. Since the loss resulted from criminal activity, logically the majority of the courts resorted to their respective state's criminal statutes and the common law to classify the wrongdoing and define the terms of coverage in the policy. As noted, a few courts partially rejected this approach because the application of the technicalities of the common law and criminal statutes seemingly achieved results which the court felt would not comport with the laymen's understanding of the policy terms, a situation which *135 the court felt could have been avoided by the drafters of the insurance policy.
Applying the reasoning of the majority of decisions, this court would be compelled to sustain the position of defendant carrier in this case. The wrongdoing in this case is technically that of obtaining property by false pretenses in which the owner was fraudulently induced to part with title and possession. At common law this is not a theft nor larceny and no coverage is thus afforded under the policy.
It is a fair assumption that the average policyholder is unaware of the common law and statutory distinctions between the various types of wrongful takings. Further, I submit the average policyholder would assume the words "theft" or "larceny" would include any wrongful taking of his vehicle, including both the classic theft while his vehicle is parked and the swindle by fraudulent or forged checks. I question whether more than a handful of policyholders have had explained to them the various limitations of theft coverage in their automobile policy prior to the time a claim for coverage is filed. On the other hand, it is also a fair assumption that most policyholders do not read their policies at the time of purchase and, therefore, would not know the limits of their coverage, even assuming the language of the policy is clear and the terms understandable. This case must, however, be decided on the assumption that the insured read the policy at the time of purchase, and the issue becomes, does the language of the policy clearly alert the insured to the limitations of coverage sought to be imposed?
In this case, as noted, the insurer sought to limit coverage for loss occasioned by wrongdoing to cases where the insured was deprived only of possession and to exclude coverage where the insured, even by preconceived fraudulent device, surrendered or transferred title to vehicle to the wrongdoer. This limitation was not clearly set forth in those or similar terms. Rather, the insurer offered coverage for *136 "theft or larceny" and relied upon the common law and statutory limitations given to those terms as the method by which coverage would be limited. As noted further, the legal definitions of these terms are substantially narrower than the common understanding and assumptions of the meaning of those terms. Thus, even assuming a policy holder read his contract at the time of purchase, his expectation of coverage would be substantially greater than the carrier's intended coverage. In my view, under these circumstances, the loss occasioned by disparity between legitimate expectation and intended coverage is the responsibility of the carrier. As has been held in cases in this State, a contract of insurance, prepared and phrased by the insurer, is to be construed liberally in favor of the insured and strictly against the insurer where the meaning of the language used is doubtful, uncertain or ambiguous. Further, words in an insurance contract should be given the meaning of common parlance and, if the language is susceptible to different meanings, the one most favorable to the insured would be adopted. Applying these principles to this case, I conclude that when the terms "theft and larceny" are used, but not clearly defined and limited, they should be deemed to include any wrongful taking of an insured vehicle achieved by a preconceived fraudulent device, whether or not there is a transfer of the certificate of ownership to the wrongdoer.
I do not determine that it would be contrary to public policy to permit carriers to limit coverage to those situations where legal title remains in the lawful owner after he has been wrongfully deprived of possession and to exclude coverage whether the wrongdoer, by fraud or trick, has secured a transfer of the certificate of ownership. I merely hold that where, as in this case, the policy affords coverage for "theft or larceny," without defining these terms or clearly limiting these terms to the wrongful taking of possession without transfer of title or similar limiting language, then coverage must be afforded for other forms of wrongful deprivation *137 of an insured vehicle achieved by a preconceived fraudulent device, whether or not there is a transfer of the certificate of ownership to the wrongdoer.
Plaintiff's motion for summary judgment is granted. Defendant's cross-motion is denied.