RACHEL J. MEISSNER, PLAINTIFF, v. THE AETNA CASUALTY AND SURETY COMPANY, DEFENDANT.

Superior Court of New Jersey
Law Division

April 19, 1984.

*George W. Johnson* for plaintiff (*Johnson & Johnson,* attorneys).

*W. Stephen Leary* for defendant.

GASCOYNE, J.S.C.

The parties agree that there is no dispute as to the facts and that the matter is ripe for disposition as a matter of law by way of cross-motions for summary judgment. On October 6, 1979 the Aetna Casualty and Insurance Company (Aetna) issued a standard family automobile policy covering a 1971 Mercedes

Benz owned by plaintiff. On July 26, 1980, during the period of coverage, plaintiff's 15-year old son took the Mercedes without her permission while she was asleep. The boy did not intend to permanently deprive his mother of her car. During a pursuit by the Town of Dover police, the boy crashed the vehicle into the pursuing police car resulting in damage to both vehicles. There was no collision coverage under plaintiff's policy.

Plaintiff now seeks to recover damages to her automobile under the comprehensive coverage provisions of the policy, captioned part II—physical damage, which in part provides:

(1) To pay for loss other than by collision to the owned automobile or to a non-owned automobile. For the purpose of this coverage breakage of glass and loss caused by ... theft or larceny ... shall not be deemed to be a loss caused by collision.

' The sole issue for resolution by the court is whether the action by plaintiff's son constitutes a "theft or larceny" within the meaning of the comprehensive coverage. There are no reported cases in New Jersey deciding this issue and in those jurisdictions where the question has been resolved, courts have reached different results.

Aetna contends that although this plaintiff sustained a loss, the loss does not fall within the terms of the policy since under the stipulated facts the taking by her son did not constitute a "theft or larceny." In order to determine what constitutes a theft or larceny under New Jersey law, it is appropriate to look to the criminal statutes for aid in interpretation.

*N.J.S.A.* 2C:20–3(a) provides:

A person is guilty of a theft if he unlawfully takes, or exercises control over, movable property of another with purpose *to deprive* him thereof. [Emphasis supplied]

*N.J.S.A.* 2C:20–1(a)(1) defines deprive as:

to withhold or cause to be withheld property of another permanently or for so extended a period as to appropriate a substantial portion of its economic value or with purpose to restore only upon payment of reward or other compensation.

The foregoing represents the elements of common-law larceny; *i.e.*, a felonious taking by trespass and carrying away of personal property without the owner's consent and with the

felonious intent to permanently deprive the owner of the property and to convert it to the use of the taker. *Rudolph v. Home Indemnity Co.*, 138 *N.J.Super.* 125, 129 (Law Div.1975).

A number of states are in agreement that a policy insuring an automobile owner against loss from theft covers loss resulting from a taking which has all the common-law elements of larceny. *See Standard Chevrolet Co. v. Fed. Hardware & Implement Mut.*, 178 *So.* 642 (La.Ct.App.1937); *Merl v. Standard Ins. Co. of N.Y.*, 173 *Misc.* 230, 17 *N.Y.S.2d* 709 (Sup.Ct. 1940); *Hoyne v. Buckeye Union Casualty Co.*, 69 *N.E.2d* 153 (Ohio Ct.App.1943); *Gillespie v. Export Ins. Co.*, 114 *Pa.Super.* 398, 174 *A.* 602 (Super.Ct.1934); *Rainville v. Farm Bureau Mut. Auto. Ins. Co.*, 117 *Vt.* 37, 83 *A.2d* 599 (Sup.Ct.1951); *LaMotte v. Retail Hardware Mut. Fire Ins. Co. of Minn.*, 203 *Wis.* 41, 233 *N.W.* 566 (Sup.Ct.1930).

The Supreme Court of Vermont had an opportunity to review an analogous set of facts in *Rainville v. Farm Bureau Mut. Auto. Ins. Co., supra,* where the plaintiff's minor son took the plaintiff's automobile from a church meeting without plaintiff's permission. The 16-year old boy drove the automobile six miles away. On the return trip to the church, the automobile ran off the road and was wrecked. The court stated:

> that if Roger had taken his father's automobile with a view only to a temporary use, intending, however, to keep it for an unreasonable time; or intending to use it in a reckless, wanton, or injurious manner; or intending to leave it to mere chance whether the owner ever recovered it or not, such taking would be, both in common sense and in law a theft within meaning of this policy
>
> . . . .
>
> But the plaintiff's evidence contains nothing which would justify a jury in finding that any of these alternatives existed. Nor is there any evidence which would justify a finding of *animo furandi*. The facts as disclosed do not add up to theft, either in law or ordinary speech. There was at most a temporary tortious conversion of the automobile, a "joy ride" . . . .
>
> [*Id.* at 39, 83 *A.2d* at 600; citation omitted]

*Accord Merl v. Standard Ins. Co. of N.Y., supra; Hoyne v. Buckeye Union Casualty Co., supra; Gillespie v. Export Ins. Co., supra; Royal Ins. Co., Ltd. v. Wm. Cameron & Co., Inc.,*

184 *S.W.*2d 936 (Tex.Civ.App.1945); *LaMotte v. Retail Hardware Mut. Fire Ins. Co., supra.*

Other jurisdictions adhere to the view that application of the common-law definition of larceny and criminal statutes to theft provisions of insurance policies yields too harsh a result. *Pennsylvania Indemnity, Fire Corp. v. Aldridge,* 117 *F.*2d 774 (D.C.Cir.1941); *Baker v. Continental Ins. Co.* 155 *Kan.* 26, 122 *P.*2d 710 (Sup.Ct.1942). In *Pennsylvania Indemnity* an unrelated boy was given permission to simonize Aldridge's automobile. Mrs. Aldridge gave the boy, Harrison, the keys to the car. Neither Mr. Aldridge nor Mrs. Aldridge authorized Harrison to move the car, but he did nevertheless. Needless to say, the inevitable occurred; the boy wrecked the car. The court was not satisfied with the strict adherence to the common-law definition of larceny nor the criminal statute. The court held, therefore, that Harrison had an intent to appropriate the property to a use inconsistent with the property rights of the person from whom it was taken and such constituted "theft within the meaning of the insurance policy." *Pennsylvania Indemnity, supra* at 778; *see also Baker v. Continental Ins. Co., supra* (Court held there was theft when boy appropriated property for personal use "as long as he saw fit").

Our own courts have been reluctant to limit coverage under comprehensive theft provisions to common-law larceny or the criminal statutes. *See Champion v. Chicago Fire & Marine Ins. Co.,* 104 *N.J.L.* 554 (E. & A. 1928); *Edgewater Nat'l Bank v. Safeguard Ins. Co.,* 81 *N.J.Super.* 383 (App.Div.1963); *Rudolph v. Home Indemnity Co., supra.* In these cases our courts have extended coverage to situations where the taking does not technically amount to common-law larceny, *e.g., Rudolph, supra,* 138 *N.J.Super.* at 135. However, the above cited cases are distinguishable from the case at bar in that the courts in those cases found a felonious intent to deprive the owner of the vehicle. No such intent is shown in the present case.

Plaintiff's reliance on *Bauman v. Royal Indemnity Co.*, 36 *N.J.* 12 (1961), is misplaced. The *Bauman* case is distinguishable from the matter *sub judice*. There the Court found that the amendment to the answers to interrogatories as to the status of the agent raised a fact question. In addition the Court found that since the policy was a renewal policy and where the language was broad, the insurance company had the obligation to place exclusion in a prominent manner so that the insured's attention should be focused on the "workmens' compensation" exclusion in fairness to the insured. The exclusion was added at the time of renewal and was not part of the initial policy. Thus, the Court felt under the circumstances the matter should be reversed and remanded to take these factors into consideration. Such are not the circumstances here.

The court in *Rudolph* went on to summarize some of the other considerations that should be weighed when interpreting the "thefts" and "larceny" provision of comprehensive coverage:

As noted further, the legal definitions of these terms are substantially narrower than the common understanding and assumptions of the meaning of those terms. Thus, even assuming a policy holder read his contract at the time of purchase, his expectation of coverage would be substantially greater than the carrier's intended coverage. In my view, under these circumstances, the loss occasioned by disparity between legitimate expectations and intended coverage is the responsibility of the carrier. As has been in cases in this State, a contract of insurance prepared and phrased by the insurer, is to be construed liberally in favor of the insured and strictly against the insurer where the meaning of the language used is doubtful, uncertain or ambiguous. Further, words in an insurance contract should be given the meaning of common parlance, and, if the language is susceptible to different meanings, the one most favorable to the insured would be adopted. [138 *N.J.Super.* at 136].

The terms of the "comprehensive coverage" under this policy of insurance are not ambiguous and susceptible of different meanings in light of the facts. There is no indication that the boy took his mother's car for anything other than a "joy ride." There is no evidence presented that would justify a finding of *animo furandi*. Nor is the loss occasioned here within the legitimate expectations of coverage under the comprehensive coverage of the insured. Therefore, circumstances

468

such as those evident in this case should not be the responsibility of the carrier. There was not a "theft" as intended under the policy.

Defendant's motion for summary judgment is granted. Plaintiff's cross-motion is denied.