**OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, AFL–CIO, LOCAL UNION NO. 4–449, Plaintiff,**

v.

**AMOCO OIL COMPANY, Defendant.**

Civ. A. No. G–92–201.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 27, 1993.

James P. Simpson, Simpson, Beeton & Leavenworth, Texas City, TX, for plaintiff.

Robert M. O'Connell, Robert Michael Moore, Fulbright & Jaworski, Houston, TX, for defendant.

## ORDER

KENT, District Judge.

Before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court is of the opinion that Plaintiff's motion should be GRANTED and Defendant's motion should be DENIED.

### I.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, the weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra,* 477 U.S. at 255, 106 S.Ct. at 2513.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met it Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial.*" *Matsushita, supra,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis original).

## II.

In this case, the material facts are not in dispute. The parties are parties to a collective bargaining agreement that covers certain employees of Defendant Amoco Oil Company ("Amoco") employed at Amoco's refinery in Texas City, Texas and that became effective February 1, 1990 (the "Agreement"). The Agreement provides that Amoco retains the right to "discharge employees for just cause." Amoco's posted rules provide that an employee may be summarily discharged for "theft of money or other property."

In October, 1990, Robert Watts, an Amoco employee covered by the agreement, was summarily discharged for theft. In particular, Amoco stated that Watts was discharged because he placed numerous long distance telephone calls, unrelated to Amoco business, from an Amoco telephone.

Plaintiff Oil, Chemical and Atomic Workers International Union, AFL–CIO, Local Union No. 4–449 ("OCAW"), acting as Mr. Watts' representative, invoked its right under the Agreement to challenge Watts' discharge by filing a grievance and submitting the dispute to a mutually selected arbitrator for resolution. The arbitrator found that just cause existed for Watts' termination. OCAW now challenges this decision and asks that the arbitration award be set aside and that the parties be required to rearbitrate the dispute before another arbitrator.

## III.

It is well settled that federal courts have limited authority to review arbitration awards. *See, e.g., United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36–38, 108 S.Ct. 364, 369–71, 98 L.Ed.2d 286 (1987). By the same token, however,

an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

In the instant case, OCAW argues that the arbitrator's award was improper because there was no finding that Watts possessed the intent to commit theft. Amoco purports to contest this assertion, but in reality attempts to sidestep it. It is true, as Amoco points out, that the arbitrator

found that Watts made numerous unauthorized telephone calls, that Watts knew that such usage was unauthorized, and that this unauthorized usage cost Amoco money. At no point, however, did the arbitrator find that, at the time he made the unauthorized calls, Watts was aware that such unauthorized usage would result in a loss to Amoco, much less that by making unauthorized calls, Watts intended to deprive Amoco of money or property.[1] Instead the arbitrator found that

> in three dictionaries the definition of "theft" [is], generally, "[t]he act of stealing something." "To steal" is simply[ ] "to take (another's property, etc[.]) dishonestly, esp. in a secret manner. It is the opinion of the Arbitrator that Grievant is guilty of "theft"—he did "steal" hours of telephone use not directly connected to his job or the Company. He did this after being warned on numerous occasions. . . .

Amoco argues that because the arbitrator found that Watts committed theft, his decision necessarily "drew its essence from the collective bargaining agreement" and is therefore unreviewable by this Court. *See United Paperworkers Int'l Union v. Misco, Inc., supra*, 484 U.S. at 36, 108 S.Ct. at 370.

▇ This argument, however, merely begs the question. While questions of contract interpretation are left to the arbitrator,[2] the arbitrator cannot, in the guise of "interpreting" the contract, substitute his own, unsupported definition of an undefined term for that term's well-established and commonly-understood definition.

▇ It has been recognized from time immemorial that the notion of theft includes the notion of intentional wrongdoing on the part of the alleged thief. *See generally Morissette v. United States*, 342 U.S.

246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). While the parties could, of course, have agreed to define theft differently,[3] no evidence to this effect was presented, *and the arbitrator did not so find.* Instead, in finding that Watts committed theft without finding that he intended to deprive Amoco of property or money, the arbitrator unilaterally departed from the common and well-understood definition of theft. Absent a finding that, in entering into the Agreement, the parties intended to depart from this well-settled definition, the arbitrator exceeded his authority: the arbitrator is empowered to interpret the contract, not to rewrite it.

Amoco, however, argues that at least one dictionary defines theft without an element of intent. Therefore, a sound basis existed for the arbitrator's decision. The Court does not agree.

First, the definition cited by Amoco does not, in the Court's view, clearly define theft without intent. It is true that the *Random House Dictionary of the English Language* defines theft as "the act of stealing; the wrongful taking and carrying away of the personal goods or property of another; larceny" and defines stealing as taking "without permission or right." At common law, however, larceny was a specific intent crime; the state had to prove that, at the time of the taking, the defendant had the intent to permanently deprive the property's owner of the property. *See, e.g., Meissner v. Aetna Casualty & Sur. Co.*, 195 N.J.Super. 462, 480 A.2d 233, 234 (Law Division 1984).

More importantly, however, even assuming that someone, somewhere may have defined theft without intent, this fact does not provide a basis for the arbitrator's decision. Contracts are legal instruments that have legal consequences. Likewise, an arbitration is a quasi-judicial proceeding, the

---

**1.** Indeed, it appears that the only evidence presented on this point was that Watts and other employees were under the impression that Amoco paid a flat rate for its long distance service regardless of how many individual long distance calls were made.

**2.** *Id.* 484 U.S. at 36–37, 108 S.Ct. at 370.

**3.** *Cf. Jones v. Alliance City Hosp.*, Civil Action No. 7286, 1988 WL 2423, at *5 (Ohio Ct.App. 1988) (noting provision of employee handbook that provided that employees could be discharged for "theft or misuse of [company] property, including unauthorized use of the [company] telephone.")

outcome of which also has certain legal consequences. Finally, certain terms have precise legal meanings, and in certain instances the legal meanings are also the most commonly understood meanings. Given these facts, it is the Court's view that an arbitrator exceeds his authority if in attempting to construe such a term in a contract, he unilaterally departs from commonly understood definition. Such are the facts of instant case.[4]

The Court hastens to point out the limitations of its decision. As noted above, questions of contract interpretation are left to the arbitrator. Only where, as here, the arbitrator substitutes his own definition of a term which has another precise and commonly understood meaning can it be said that the arbitrator has ceased to merely interpret the contract and has instead chosen to "dispense his own brand of industrial justice."

Therefore, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is GRANTED.

It is further ORDERED that Defendant's Motion for Summary Judgment is DENIED.

It is further ORDERED that the arbitrator's awarded is hereby VACATED, and the parties are ORDERED to rearbitrate this issue before a different arbitrator.

It is further ORDERED that each party bear its own taxable costs, expenses, and attorneys' fees.

It is further ORDERED that the parties file no further pleadings on this issue in this Court. The parties are instructed to seek any relief to which they feel themselves entitled from the United States Court of Appeals for the Fifth Circuit.

IT IS SO ORDERED.

## FINAL JUDGMENT

For the reasons stated in the Court's Order entered this date, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is GRANTED.

It is further ORDERED that Defendant's Motion for Summary Judgment is DENIED.

It is further ORDERED that the arbitrator's awarded is hereby VACATED, and the parties are ORDERED to rearbitrate this issue before a different arbitrator.

It is further ORDERED that each party bear its own taxable costs, expenses, and attorneys' fees.

It is further ORDERED that the parties file no further pleadings on this issue in this Court. The parties are instructed to seek any relief to which they feel themselves entitled from the United States Court of Appeals for the Fifth Circuit.

IT IS SO ORDERED.

THIS IS A FINAL JUDGMENT.

4. The Court notes that while numerous courts have found that, under similar collective bargaining agreements, theft constitutes just cause for summary discharge, *see, e.g., Young Radiator Co. v. UAW,* 734 F.2d 321 (7th Cir.1984), none of these courts has even suggested that an employee could be discharged for theft absent a showing that the employee intended to deprive the company of money or property. In other words, both the arbitrators deciding the cases and the courts reviewing them have given theft its precise, legal, and commonly understood meaning. *See Memphis Dist. of Browning–Ferris Indus., Inc. v. Teamsters Local Union No. 984,* 946 F.2d 895 (6th Cir.1991) (unpublished opinion). Similarly, courts considering wrongful discharge claims unrelated to collective bargaining agreements have also relied on the assumption that theft includes an element of intent. *See Pyle v. Ledex, Inc.,* 49 Ohio App.3d 139, 551 N.E.2d 205, 207 (1988) (employee handbook distinguishing between theft and acts of misuse of company property such as unauthorized use of the telephone); *City of Lubbock v. Estrello,* 581 S.W.2d 288 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.) (upholding police officer's discharge for unauthorized telephone use on the ground that such use was a violation of the Texas Penal Code).