23 A.3d 436 (2011)
421 N.J. Super. 214
Janet DUDDY, Plaintiff-Appellant,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO), Defendant-Respondent.
Docket No. A-4293-09T4
Superior Court of New Jersey, Appellate Division.
Argued February 15, 2011.
Decided July 1, 2011.
*437 Anthony J. Accardi, Livingston, argued the cause for appellant (Accardi & Mirda, P.C., attorneys; Mr. Accardi, of counsel and on the brief).
Kenneth R. Foreman argued the cause for respondent (Harwood Lloyd, L.L.C., attorneys; Curtis J. Turpan, of counsel; Paul E. Kiel, Hackensack, on the brief).
Before Judges WEFING, BAXTER and KOBLITZ.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Plaintiff Janet Duddy appeals from trial court orders granting summary judgment to defendant Government Employees Ins. Co. (GEICO) and denying her subsequent motion for reconsideration. After reviewing the record in light of the contentions advanced on appeal, we reverse.
Plaintiff had an automobile insurance policy with GEICO that provided coverage for two automobiles, one of which was a 2004 Pontiac GTO used by her son. He decided to sell the vehicle and placed an ad on Craigslist. George Gibson responded to the ad and, after inspecting the car, said he would purchase it. They agreed on a price of $15,000. Gibson said he would return on April 4, 2008, to pay for the car and pick it up. Plaintiff called GEICO to notify it that the Pontiac should be dropped from her policy and a replacement vehicle added. The individual to whom she spoke on the telephone indicated this would be attended to.
*438 Gibson did return on April 4, and he gave plaintiff $2,000 in cash and a cashier's check drawn on Bank One, a unit of JP Morgan Chase, for $13,000. Plaintiff handed over the keys and the title, and Gibson drove away. The following day, she deposited the check into her account with Bank of America, which credited her with the proceeds. Approximately a week later, her account was debited $13,000. When she contacted her bank, and then Chase, she learned that the cashier's check Gibson had given to her was fraudulent. A subsequent investigation revealed that Gibson had been paid by an individual named Troy Richardson to serve as an intermediary in the transaction. The car was never recovered, and Richardson subsequently entered a plea of guilty to a charge of receiving stolen property. N.J.S.A. 2C:20-7a.
When plaintiff learned what had happened, she promptly reported her loss to GEICO. GEICO initially advised her, in a letter dated May 8, 2008, that the loss was not covered because she had requested on April 3, 2008, that the GTO be removed as a covered vehicle on April 4, 2008, and the insurer, acting on her request, had removed the vehicle from the policy at 12:01 a.m. on April 4. She protested that GEICO had acted improperly in deleting coverage for the vehicle on the first minute of the day on which it was to be picked up. GEICO no longer asserts that action as a basis to deny coverage. Rather, on November 17, 2008, GEICO sent plaintiff a letter declining coverage because she had sold the vehicle.
Plaintiff filed suit, relying on that portion of her GEICO policy that included theft as a covered loss under the comprehensive coverage portion of her policy. GEICO, in turn, argued that the loss was not covered because another portion of the policy excluded as a covered loss a loss that resulted from sale of an owned auto. The trial court, on cross-motions for summary judgment, found this to be a sales transaction and thus within the policy's exclusionary language. This appeal followed.
"The interpretation of contracts and their construction are matters of law for the court subject to de novo review." Sealed Air Corp. v. Royal Indem. Co., 404 N.J.Super. 363, 375, 961 A.2d 1195 (App.Div.), certif. denied, 196 N.J. 601, 960 A.2d 396 (2008). We note that this dispute with respect to the meaning of plaintiff's insurance policy is governed by certain underlying legal principles that are well settled.
We begin with an overview of the fundamental rules for interpreting insurance policies. As contracts of adhesion, such policies are subject to special rules of interpretation. . . . [and] should be construed liberally in the insured's favor to the end that coverage is afforded to the full extent that any fair interpretation will allow. Notwithstanding that premise, the words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability.
[Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537, 582 A.2d 1257 (1990) (citations omitted).]
Thus, those clauses of an insurance policy that afford coverage are to be broadly construed in favor of the insured so as not to defeat the insured's reasonable expectations. Sealed Air, supra, 404 N.J.Super. at 375, 961 A.2d 1195 (noting the "well-settled principles governing the interpretation of contracts of insurance that mandate broad reading of coverage provisions, narrow reading of exclusionary provisions, resolution of ambiguities in the insured's favor, and construction consistent *439 with the insured's reasonable expectations"). Exclusionary clauses are to be narrowly construed.
[I]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion. As a result, exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage[,] rather than one that limits it.
[Flomerfelt v. Cardiello, 202 N.J. 432, 442, 997 A.2d 991 (2010) (citations omitted).]
Our research has not uncovered a reported decision in New Jersey that has dealt with reconciling these two clauses, one affording coverage for theft and the other excluding a loss for the sale of the insured vehicle, in a similar context.[1] Two cases, however, are instructive, Lilliston Chrysler Plymouth v. Universal Underwriters Group, 329 N.J.Super. 318, 747 A.2d 815 (App.Div.2000), and Rudolph v. Home Indemnity Co., 138 N.J.Super. 125, 350 A.2d 285 (Law Div.1975).
The plaintiff in Lilliston was an automobile dealer insured through the defendant Universal. 329 N.J.Super. at 320, 747 A.2d 815. Coverage for the plaintiff's inventory was provided in the instance of an "extended theft," which the policy defined as the plaintiff's
voluntarily parting with evidence of title to or possession of a COVERED AUTO when induced by. . . .
(d) any other criminal scheme, criminal trick or criminal device which induces YOU, at that time, to part with evidence of title to or possession of the COVERED AUTO.
[Id. at 320-21, 747 A.2d 815.]
When the plaintiff dealer sold vehicles to customers deemed "high risk," it would arrange financing through an individual named Dorsey; Dorsey would place the loan, collect the proceeds and remit them, less his commission, to the plaintiff. Id. at 321, 747 A.2d 815. The plaintiff sold two vehicles to two individuals who financed, in essence, the entire purchase price, and the plaintiff, in accordance with its usual practice, turned to Dorsey to arrange the financing. Id. at 321, 747 A.2d 815. He did so but pocketed the loan proceeds himself. Id. at 321-22, 747 A.2d 815. Based upon that defalcation (Dorsey subsequently pled guilty to theft), the plaintiff submitted a claim to Universal under the extended theft portion of its policy. Universal rejected the claim, and litigation followed. The trial court agreed with Universal that there was no coverage because there was no evidence of Dorsey's intent at the point when Lilliston surrendered the cars and title to the purchasers. Id. at 322, 747 A.2d 815. We reversed, however, concluding that there was a question of fact with respect to whether Dorsey "had been engaged in a `criminal scheme, criminal trick or criminal device' to induce plaintiff to part with the titles . . . [,] the vehicles . . . and . . . the money to himself." Id. at 323, 747 A.2d 815.
Rudolph, supra, is a trial court decision involving closely similar facts to those presented to us. The plaintiff sold his car in a private sale and, upon receiving the purchaser's check, transferred possession and title. 138 N.J.Super. at 127, 350 A.2d 285. He then learned the check was forged. He submitted a claim under his *440 auto insurance policy, which provided coverage for a loss due to "theft and larceny." Ibid. Those terms were not defined in the policy, and the trial court concluded that the common understanding of the terms should control the coverage question, stating, "when the terms `theft and larceny' are used, but not clearly defined and limited, they should be deemed to include any wrongful taking of an insured vehicle achieved by a preconceived fraudulent device.. . ." Id. at 136, 350 A.2d 285.
GEICO distinguishes Rudolph on the basis that the court there was not confronted with the exclusionary clause upon which it relies here. We reject that distinction for several reasons.
Initially, we question whether plaintiff's transaction can fairly be characterized as a contract of sale in light of the fact that there clearly was no meeting of the minds, and the transaction was not consummated; plaintiff did not receive the bargained-for consideration. A sale "contemplates a transfer of property from one person to another for a consideration of value. . . . Implicit [are] the unconditional obligations of the seller to pass title, and of the buyer to pay a valuable consideration therefore." Madison Indus. v. Eastman Kodak Co., 243 N.J.Super. 578, 586, 581 A.2d 85 (App.Div.1990). We are satisfied that to treat this transaction as a "sale" for purposes of plaintiff's insurance policy would run counter to the policy we noted earlier, of strictly construing exclusionary clauses in an insurance policy.
Further, under our criminal code, theft is now a "single offense and a defendant charged with `theft' may be found guilty if the defendant's conduct constitutes `theft' under any provision of Chapter 20 of the Code. . . ." State v. Washington, 408 N.J.Super. 564, 580, 975 A.2d 955 (App.Div.), certif. denied, 200 N.J. 549, 985 A.2d 647 (2009); N.J.S.A. 2C:20-2. The significance of this statutory unification of theft offenses was recognized in a similar context in Modern Sounds & Systems, Inc. v. Federated Mutual Insurance Co., 200 Neb. 46, 262 N.W.2d 183 (1978) (plaintiff sold a car and received a fraudulent check; plaintiff could recover under its policy which provided coverage for a loss due to theft or larceny). We thus disagree with the trial court's comment that this transaction does not fit within the common understanding of the term theft.
Plaintiff also urges on appeal that in the event of a reversal, she would be entitled to an award of counsel fees. The trial court did not address this question, and we thus decline to do so in the first instance.
The orders under review are reversed, and the matter is remanded to the trial court for further proceedings.
NOTES
[1] Cases considering what constitutes theft for purposes of an auto theft policy are collected in Christopher H. Hall, Annotation, What Constitutes Theft Within Automobile Theft Insurance PolicyModern Cases, 67 A.L.R.4th 82 (2009).