NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0943-15T2

CURTIS LACKLAND,
CORPORATE EMPLOYEE
BENEFITS, LLC,

 Plaintiffs-Appellants,

v.

BROWN & BROWN METRO, INC.,

 Defendant-Respondent.
______________________________

 Argued December 15, 2016 – Decided June 29, 2017

 Before Judges Lihotz and O'Connor.

 On appeal from Superior Court of New Jersey,
 Law Division, Atlantic County, Docket No. L-
 3490-13.

 George N. Polis argued the cause for
 appellants.

 Thomas J. Cahill argued the cause for
 respondent (Satterlee Stephens Burke &
 Burke, L.L.P., and Louis Charles Shapiro,
 P.A., attorneys; Mr. Cahill and Mr. Shapiro,
 of counsel and on the brief).

PER CURIAM

 Plaintiff Corporate Employee Benefits, L.L.C. (CEB) and

defendant Brown & Brown Metro, Inc., are competing insurance
brokers; plaintiff Curtis Lackland is a principal in CEB. In

this action for tortious interference with a prospective

economic advantage, plaintiffs appeal from a September 18, 2015

Law Division order granting defendant summary judgment

dismissal. We affirm.

 I

 In 2011, the Asbury Park Board of Education (Board) issued

a request for proposal, in which it sought bids for insurance

brokerage services. At the time, defendant had been the broker

of record for the Board every academic year since 1999. Both

CEB and defendant submitted responses to the Board's request for

proposal.

 On June 29, 2011, the Board voted to select CEB as its

broker for the 2011-2012 academic year. Present at the meeting

was the State appointed monitor, Lester Richens.1 After the

1
 In 2006, the Legislature passed the School District Fiscal
Accountability Act (Act), N.J.S.A. 18A:7A-54 to -60, to address
the problem of some school districts' failure to correct various
deficiencies identified in their annual audits. Assembly
Appropriations Comm., Statement to Assembly Bill No. 2684 (Mar.
13, 2006). The Act authorizes the Commissioner of the
Department of Education to appoint a monitor "to provide direct
oversight of a board of education's business operations and
personnel matters" when a school district receives an adverse
opinion by its independent auditor or demonstrates two or more
fiscal shortcomings as delineated in the Act. N.J.S.A. 18A:7A-
55(a). Once appointed, the monitor has the authority, among
other things, to:

 2
 A-0943-15T2
vote, Richens informed the Board he wanted to take the matter

"under advisement." On June 30, 2011, Richens overrode the

Board's decision to appoint CEB as the broker of record,

directing instead defendant be the broker of record for some

kinds of insurance, but CEB be the broker of record for other

forms of insurance.

 Specifically, the monitor directed defendant be the broker

of record for "all insurances placed with the New Jersey School

Boards Association Insurance Group," and that CEB be the broker

 (1) oversee the fiscal management and
 expenditure of school district funds,
 including, but not limited to, budget
 reallocations and reductions, approvals of
 purchase orders, budget transfers, and
 payment of bills and claims;

 . . . .

 (5) . . . override . . . a vote by the board
 of education on any of the matters set forth
 in this subsection, except that all actions
 of the State monitor shall be subject to the
 education, labor, and employment laws and
 regulations
 . . . .

 [N.J.S.A. 18A:7A-55(b).]

 The parties did not inform us why a monitor was appointed to
oversee the fiscal management and expenditures of the Asbury
Park school district, but there is no dispute the monitor
possessed the authority to override decisions of the Board, in
accordance with this Act, including the decision before the
Board at issue here.

 3
 A-0943-15T2
of record for the following forms of insurance: "School Board's

Legal Liability[,] Student Accident Insurance, Workman's

Compensation SAIF[,] and Medical and Dental coverage."2 In a

memorandum submitted to the Board dated June 30, 2011, Richens

noted he arrived at his decision after "working most of the day

with" CEB, defendant, the New Jersey School Boards Association

Insurance Group, and SAIF. He also stated it was

 understood CEB must qualify to participate
 in SAIF (Workman's Compensation Carrier) to
 be the broker of record. [CEB has]
 represented that [it] will file the
 necessary paperwork with SAIF and that [it]
 further understand[s] that if [it does] not
 qualify to be a member of SAIF[,] the
 Workman's Compensation Insurance will revert
 back to [defendant].

 The following day, July 1, 2011, defendant submitted a

letter to Richens, "strongly recommending that the Board revisit

its decision to award" certain insurance policies to CEB. The

letter emphasized defendant's experience and expertise in

servicing school districts. Among other things, defendant noted

it had successfully secured various forms of coverage for the

Asbury Park school district from A-rated insurance carriers, but

2
 SAIF stands for the School Alliance Insurance Fund. Formed
over twenty years ago, SAIF operates as a joint insurance fund,
and is registered with and regulated by the New Jersey
Department of Banking and Insurance and the Department of
Community Affairs. SAIF specializes in providing certain forms
of coverage to school districts. Here, SAIF has provided the
Board with workers compensation coverage since 2006.
 4
 A-0943-15T2
at a cost within the district's budget; identified and corrected

various deficiencies insofar as the kind of bonds the school

district was required to have; and had a large staff, which

enabled it to meet all of the Board's needs. Defendant pointed

out CEB had no experience servicing school districts, and had

only one person on staff qualified to service the Board's needs.

 In accordance with the monitor's decision, on July 18,

2011, the Board passed a resolution appointing defendant and CEB

as broker of record for those specific forms of insurance

outlined by the monitor in his June 30, 2011 memorandum.

Consistent with Richens' memorandum, the Board also noted in its

resolution whether CEB would be the broker to provide workers

compensation coverage would depend upon whether CEB were

approved by SAIF. It is not disputed SAIF failed to approve

CEB, and it was conceded CEB was not qualified to do business

with SAIF at the time in question. Defendant informs it did

become the broker of record to provide workers compensation

coverage for the Board.

 In 2013, plaintiffs filed a complaint alleging defendant

tortiously interfered with a prospective economic advantage.

The plaintiffs' sole contention is defendant's July 1, 2011

letter "falsely imput[ed] disqualifying or ineligibility

triggering criteria," which was "intended to interfere with the
 5
 A-0943-15T2
Board's appointing CEB as Insurance Broker of Record" for the

district.

 After discovery concluded, defendant moved for summary

judgment, arguing the July 1, 2011 letter could not have had any

impact upon the monitor's decision to override the Board's

determination to appoint CEB to serve as the broker of record

for all of its insurance needs, because the monitor made his

decision to override the Board on June 30, 2011. In addition,

defendant argued the points it made about CEB in its July 1,

2011 letter were derived from either CEB's or the Department of

Banking and Insurance's website and, in any event, were

accurate.

 During Lackland's deposition, he stated he was not aware of

any comments defendant made about CEB he considered disparaging,

other than what was contained in the July 1, 2011 letter.

During oral argument on the motion, plaintiffs' counsel conceded

Richens did not receive the July 1, 2011 letter in advance of

making his decision on June 30, 2011, to override the Board and

direct defendant be the broker of record for some forms of

insurance. However, during the argument, plaintiffs advanced a

new theory of liability.

 Specifically, plaintiffs argued Dominick S. Cinelli, a

senior vice president of defendant, may have communicated with
 6
 A-0943-15T2
Richens and the Board at the June 29, 2011 Board meeting, or

with Richens on June 30, 2011. Acknowledging they had no direct

evidence, plaintiffs pointed out Richens stated in his June 30,

2011 memorandum that he had communicated with plaintiffs and

defendant on this day. Plaintiffs posited defendant may have

induced Richens to require CEB be qualified by SAIF before CEB

could obtain coverage through this fund for the Board's benefit.

 The trial court adjourned the motion to enable plaintiffs

to file papers in support of this new factual claim, but they

failed to do so. Cinelli, however, submitted an affidavit

averring defendant never urged Richens or the Board to require

CEB qualify with SAIF in order to provide workers compensation

coverage to the Board. Cinelli also added that, in his

experience, SAIF had always required brokers to be approved by

it before it would permit a person or entity to broker a SAIF

product.

 The trial court granted defendant's motion. In its oral

opinion, the court stated:

 Even giving the plaintiff[s] the benefit of
 all legitimate inferences as the court must
 do under Rule 4:46-2, the court cannot say
 that there is sufficient evidence by which a
 reasonable juror could conclude that the
 defendant tortuously interfered with the
 defendant's prospective economic advantage.
 There is simply a dearth of admissible
 evidence with respect to what, if anything,
 7
 A-0943-15T2
 was communicated between Dr. Richens and the
 defendant[] on June 30, 2011. The court
 recognizes the significance of
 circumstantial evidence and inferences drawn
 in favor of the non-moving party. Under the
 facts of this case, however, it is pure
 speculation to suggest that the defendant
 somehow prevailed upon Dr. Richens to
 require CEB to qualify for SAIF. . . . More
 importantly, Doctor Richens was never
 deposed to explore what transpired on June
 29th through June 30th prior to his awarding
 the contract in this matter. There was also
 no testimony from any representative from
 SAIF or Mr. Cinelli. In short, the
 plaintiff[s]' argument appears to be pure
 speculation.

 II

 On appeal, plaintiffs contend the trial court failed to

take into consideration the circumstantial evidence and accord

to them all of the legitimate inferences to which they, as the

non-moving parties, were entitled. Thus, they argue, they are

entitled to have this matter decided by a jury. We disagree and

affirm.

 We review the trial court's grant of summary judgment de

novo, employing the same standard used by the trial court.

Davis v. Devereux Found., 209 N.J. 269, 286 (2012); Brill v.

Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). If

there are no material facts in dispute, we consider whether,

viewing the undisputed facts in the light most favorable to the

non-moving party, the moving party is entitled to judgment as a
 8
 A-0943-15T2
matter of law. Agurto v. Guhr, 381 N.J. Super. 519, 525 (App.

Div. 2005).

 To prove tortious interference with prospective economic

advantage, a party must show the following:

 First, the complaint "must allege facts that
 show some protectable right--a prospective
 economic or contractual relationship.
 Although the right need not equate with that
 found in an enforceable contract, there must
 be allegations of fact giving rise to some
 'reasonable expectation of economic
 advantage.'" Second, "the complaint must
 allege facts claiming that the interference
 was done intentionally and with 'malice.'
 . . . [M]alice is defined to mean that the
 harm was inflicted intentionally and without
 justification or excuse." Third, "the
 complaint must allege facts leading to the
 conclusion that the interference caused the
 loss of the prospective gain. A plaintiff
 must show that 'if there had been no
 interference[,] there was a reasonable
 probability that the victim of the
 interference would have received the
 anticipated economic benefits.'" Fourth,
 "the complaint must allege that the injury
 caused damage."

 [Macdougall v. Weichert, 144 N.J. 380, 404
 (1996) (citations omitted) (quoting Printing
 Mart-Morristown v. Sharp Elecs. Corp., 116
 N.J. 739, 751-52 (1989)).]

 Here, the record is devoid of evidence, circumstantial or

otherwise, or any inferences to be drawn, that defendant

interfered with plaintiffs' economic or contractual relationship

with the Board. As plaintiffs candidly admitted during oral

 9
 A-0943-15T2
argument, defendant's July 1, 2011 letter to Richens was not

released to or viewed by him before he issued his June 30, 2011

memorandum directing defendant be the broker of record for some

forms of insurance. We need not reach whether any of the

contents of the July 1, 2011 letter even rose to the level of

malice, because there is no dispute the letter was not seen by

Richens before he overrode the Board's June 29, 2011 vote.

 Second, there is no evidence or inference to be drawn

defendant suggested to Richens that CEB be qualified by SAIF

before CEB were to obtain coverage from SAIF for the benefit of

the Board, not to mention the very obvious point the decision

whether to impose such a condition belonged solely to SAIF.

 Plaintiffs also argue the July 1, 2011 letter may have

influenced the Board when it passed the resolution on July 18,

2011, to memorialize Richens' decision. Putting aside the fact

the decision to permit defendant to be the broker of record for

certain forms of insurance was Richens' decision and not the

Board's, this argument was not raised before or decided by the

trial court. Plaintiffs also suggest the request for proposal

issued by the Board did not comply with the New Jersey Public

Contracts Law, N.J.S.A. 40A:11-1 to -2.1; this argument also was

neither raised before nor decided by the trial court.

 10
 A-0943-15T2
 "Generally, an appellate court will not consider issues,

even constitutional ones, which were not raised below." State

v. Galicia, 210 N.J. 364, 383 (2012). Thus, even if these two

arguments had been raised, the trial court did not address them

in its opinion and, thus, we decline to do so in the first

instance. Duddy v. Gov't Emps. Ins. Co., 421 N.J. Super. 214,

221 (App. Div. 2011).

 To the extent we have not addressed any of plaintiffs'

remaining arguments, it is because they are without sufficient

merit to warrant discussion in a written opinion. R. 2:11-

3(e)(1)(E).

 Affirmed.

 11
 A-0943-15T2