NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3379-14T4

MARIA I. ALVAREZ,

 Plaintiff-Appellant,

v.

JOHN A. TORTORA,

 Defendant-Respondent,

_________________________________________

 Argued March 23, 2017 – Decided July 17, 2017

 Before Judges Lihotz, O'Connor and Whipple.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Bergen
 County, Docket No. FM-02-1561-12.

 Louis J. Lamatina argued the cause for
 appellant.

 Jenny Berse argued the cause for respondent.

PER CURIAM

 Following a hearing, a Family Part court found the parties

in this matrimonial matter were not married, and entered an

order on February 10, 2015, dismissing plaintiff Maria I.

Alvarez's complaint for divorce and defendant John A. Tortora's
counterclaim for a declaration the marriage was null and void.

Plaintiff appeals from that order. We reverse the provision in

the order dismissing the complaint, and remand for further

proceedings.

 I

 In this action plaintiff has maintained the parties, both

American citizens, were married on April 26, 2004, in Havana,

Cuba.1 They have one child, born before the marriage. Both

parties were previously married and divorced. Before commencing

trial on the action for divorce, the court held a hearing on the

husband's claim the parties were not in fact married. The

pivotal evidence adduced at that hearing, at which only

plaintiff testified and introduced documentary evidence, was as

follows.

 Plaintiff asserted she and defendant decided to get married

in the spring of 2004. They decided to get married in Cuba,

where some of her relatives resided. Plaintiff called a cousin

living in Cuba and ascertained what was needed to get married

there. In accordance with that information, both parties

brought the divorce judgments generated from their former

marriages and their birth certificates. Plaintiff's cousin also

1
 The marriage certificate in fact states the marriage was on
April 27, 2004.
 2
 A-3379-14T4
made an appointment for the parties to appear before an

officiant licensed to perform marriages.

 After arriving in Cuba in April 2004, plaintiff and

defendant went to a place in Havana "like [a] Town Hall," and

submitted the aforementioned documents in order to get a

marriage license. The documents were translated into Spanish by

staff at the office where marriage licenses were issued, for

which the parties paid a fee of $250 or $275.

 A day or so later, the parties received their marriage

license and returned to the same location, where they were

married by an officiant in the presence of their daughter, two

witnesses, and plaintiff's cousin. The ceremony, which was

conducted in Spanish, was videotaped by one of the witnesses;

that videotape was placed in evidence and played during the

hearing.

 Plaintiff testified to some of what the officiant stated

during the ceremony. First, the officiant noted the documents

the parties had submitted were complete. After the officiant

commented about the need for the parties to respect each other

and take care of their family, the parties are seen signing the

marriage certificate on the videotape. The officiant then

declared, "John and Maria having completed all the requirements

to – for matrimony, I declare you man and wife." A copy of the
 3
 A-3379-14T4
marriage certificate was placed in evidence.

 Plaintiff admitted the parties did not live together during

their marriage, although they did see each other multiple times

during the week. She also acknowledged there were a number of

times during the marriage when she held herself out as single.

Specifically, she did so on domestic violence applications

against defendant, a bankruptcy petition she filed, an

application for welfare benefits, a case information statement

for child support against a former spouse, and income tax

returns.

 Plaintiff claimed defendant insisted she not reveal they

were married because he wanted her to obtain benefits from the

government she could not get if married, such as food stamps.

She testified she acceded to defendant's demands because he

intimidated her.

 Following the hearing, the court dismissed plaintiff's

complaint and defendant's counterclaim. The court noted the

parties failed to obtain a license from the United States

government granting them permission to get married in Cuba.

Although somewhat unclear, the court appears to have relied upon

31 C.F.R. § 515.201 and 31 C.F.R. § 515.560, which lists those

activities in which an American can engage in Cuba if he or she

obtains the appropriate license from the federal government. In
 4
 A-3379-14T4
the trial court's opinion, the parties were required to obtain a

license from the United States government to get married in

Cuba. Without citing any authority in support, the court

concluded the parties' failure to secure such license voided

their marriage.

 Because pertinent to one of the issues on appeal, we

mention plaintiff engaged in discovery on the issue of alimony,

child support, and equitable distribution. The court ordered

defendant to provide plaintiff certain financial discovery,

$5000 toward the cost of retaining an expert accountant, and

$15,000 in counsel fees.

 II

 On appeal, plaintiff raises the following points for our

consideration:

 POINT I: THE TRIAL COURT ERRED IN
 DISMISSING PLAINTIFF'S COMPLAINT ON
 THE GROUND THAT THE PARTIES WERE
 NEVER LEGALLY MARRIED.

 A. The Parties Were Validly
 Married in Accordance With
 Cuban Law.

 B. Even If The Parties Were
 Not Legally Married,
 Defendant Must Be Estopped
 From Disputing The Validity
 Of The Marriage To
 Plaintiff Based Upon The
 Doctrine Of Estoppel,
 Quasi-Estoppel And Unclean
 5
 A-3379-14T4
 Hands.

 POINT II: THE TRIAL COURT ERRED IN
 IMPROPERLY APPLYING THE LAW OF THE
 CASE DOCTRINE REGARDING THE PRIOR
 ORDERS OF THE TRIAL COURT CONCLUDING
 THAT THE PARTIES' MARRIAGE WAS
 VALID.

 POINT III: THE TRIAL COURT ERRED BY
 FAILING TO ENFORCE ITS FIVE ORDERS
 ADJUDICATING DEFENDANT IN VIOLATION
 OF LITIGANT'S RIGHTS.

 POINT IV: THE TRIAL COURT ERRED IN
 AFFORDING DEFENDANT AFFIRMATIVE
 RELIEF WHILE HE REMAINED IN
 VIOLATION OF COURT ORDERS.

 We initially address plaintiff's contention the court erred

when it found the parties were never legally married. At the

outset, we note our review of a Family Part court's factual

findings is limited. N.J. Div. of Youth & Family Servs. v.

M.M., 189 N.J. 261, 278-79 (2007). We must defer to the

findings of the Family Part if those findings are "supported by

adequate, substantial, and credible evidence" in the record.

N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552

(2014).

 However, we owe no special deference to the trial court's

"interpretation of the law and the legal consequences that flow

from established facts." Manalapan Realty, L.P. v. Twp. Comm.

of Manalapan, 140 N.J. 366, 378 (1995). A reviewing court is

 6
 A-3379-14T4
compelled to reverse if the trial court abused its discretion,

failed to consider all the controlling legal principles, or

reached a determination that "could not reasonably have been

reached on sufficient credible evidence present in the record

after considering the proofs as a whole." Heinl v. Heinl, 287

N.J. Super. 337, 345 (App. Div. 1996).

 "An action for divorce is predicated on a valid marriage

. . . ." Wigder v. Wigder, 14 N.J. Misc. 880, 881 (Ch. 1936).

However, "the law of this State does not require [a] plaintiff

[in an action for divorce] to prove the validity of . . . the

parties' marriage." Raspa v. Raspa, 207 N.J. Super. 371, 377

(Ch. Div. 1985). "[O]nce plaintiff shows the parties were in

fact married, the burden of proving invalidity shifts to

defendant, and it must be met by clear and convincing evidence."

Ibid. A plaintiff can demonstrate there was a marriage by

producing the marriage certificate or a public record of the

marriage. Simmons v. Simmons, 35 N.J. Super. 575, 579 (App.

Div. 1955).

 Here, a copy of the marriage certificate was admitted into

evidence. Although unnecessary to establish the parties were in

fact married once the marriage certificate was admitted,

plaintiff also produced corroborating evidence of the marriage,

specifically, the videotape of the wedding ceremony, in which
 7
 A-3379-14T4
the officiant made statements consistent with one conducting a

marriage ceremony, such as declaring at the conclusion of the

ceremony the parties were "man and wife."

 At the point the marriage certificate was placed into

evidence, the burden to show the marriage was invalid shifted to

defendant. Moreover, defendant had the burden to show the

marriage was invalid according to Cuban law. "It is a general

principle of . . . interstate law, subject to but few

exceptions, that the validity of a marriage, so far as it

depends upon the preliminaries and the manner or mode of its

performance or solemnization, is to be determined by reference

to the law of the place where it was performed or solemnized."

Sturm v. Sturm, 111 N.J. Eq. 579, 582 (Ch. 1932). Defendant did

not introduce any evidence disputing the validity of the

marriage, let alone under Cuban law.

 Defendant asserts the trial court correctly found the

parties violated 31 C.F.R. § 515.560 when they failed to obtain

a license from the federal government authorizing them to get

married in Cuba. He further argues the court correctly

concluded this omission voided the marriage. However, defendant

did not cite and we were unable to find any authority supporting

the premise a failure to obtain the federal government's

permission to get married in Cuba has the legal effect of
 8
 A-3379-14T4
voiding a marriage properly entered in Cuba in accordance with

Cuban law.

 To be sure, if the parties violated this regulation and the

federal government chooses to prosecute them, they would be

subject to various civil and criminal penalties. See 31 C.F.R.

§ 515.701. However, none of the penalties provide a party's

marriage shall be deemed void if a party is found in violation

of 31 C.F.R. § 515.560 or any other regulation in 31 C.F.R. §

515. The prohibited acts in which the parties allegedly engaged

have no bearing on the question of whether they were legally

married under Cuban law.

 Defendant asserts the court could not have considered or

placed any weight upon the marriage certificate because it did

not contain an apostille. In general, an apostille is a special

seal applied by an authority to certify a document is a true

copy of an original. Apostilles are available in countries

which are signatories to the 1961 Hague Convention Treaty

Abolishing the Requirement of Legalization of Foreign Public

Documents. See Apostilles and Notary Certifications, State of

New Jersey Department of Treasury (June 30, 2017),

http://www.state.nj.us/treasury/revenue/dcr/programs/apostilles.

shtml. However, at the time in question, Cuba was not a

signatory to this treaty. See 12: Convention of 5 October 1961
 9
 A-3379-14T4
Abolishing the Requirement of Legalisation for Foreign Public

Documents, HCCH (June 30, 2017),

https://www.hcch.net/en/instruments/conventions/status-

table/?cid=41.

 Moreover, the court admitted the certificate into evidence.

In addition, N.J.R.E. 902(c) provides: "If reasonable

opportunity has been given to all parties to investigate the

authenticity and accuracy of official documents, the court may,

for good cause shown, order that they be treated as

presumptively authentic without final certification . . . ."

Here, defendant had ample time before the hearing to investigate

the authenticity of the document, but did not introduce any

evidence challenging the authenticity of the marriage

certificate.

 Defendant raises other arguments. He references other

federal regulations he claims the parties violated and

maintained such violations invalidated the parties' marriage.

None of these arguments has sufficient merit to warrant

discussion in a written opinion. R. 2:11-3(e)(1)(E). The

balance of defendant's arguments were not raised before the

trial court; accordingly, we decline to address them. Nieder v.

Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

 In summary, plaintiff presented a marriage certificate
 10
 A-3379-14T4
showing the parties wed in Cuba. Although unnecessary to shift

the burden to defendant to prove the marriage was invalid,

plaintiff also presented other evidence, specifically, the

videotape, showing the parties participated in a marriage

ceremony. After the marriage certificate was introduced, the

burden shifted to defendant. However, he presented no evidence

the marriage was invalid under Cuban law – or under any law, for

that matter. In fact, he did not present any evidence during

the hearing at all. His argument the parties' alleged

violations of federal regulations invalidated their marriage was

unsupported by legal authority.

 Because the court erred when it determined the marriage was

invalid, we reverse the February 10, 2015 order dismissing the

complaint, and remand this matter for disposition of plaintiff's

cause of action for divorce. While defendant's answer shall be

revived, those affirmative defenses pertaining to the question

of the validity of the parties' marriage and his counterclaim

shall not be.

 Our decision obviates the necessity we address plaintiff's

remaining arguments. However, we make note of the fact

plaintiff complains the trial court failed to address five

orders compelling defendant to provide discovery, give plaintiff

$5000 toward the cost of retaining an expert accountant, and pay
 11
 A-3379-14T4
her $15,000 in attorney's fees. Presumably the court did not

address the provisions in those orders directing defendant to

provide discovery and to contribute toward the cost of

plaintiff's expert accountant because the court dismissed

plaintiff's cause of action for divorce. In any event, because

the court did not address the issues plaintiff raises in

connection with these orders, we decline do so in the first

instance. See Duddy v. Gov't Emps. Ins. Co., 421 N.J. Super.

214, 221 (App. Div. 2011). On remand, plaintiff may make the

appropriate application to enforce these orders.

 Finally, we further direct that, on remand, the case be

assigned to a different judge. As the prior court may find it

difficult to ignore its earlier findings, we believe it best the

case be reconsidered by a new fact-finder.

 Reversed and remanded for further proceedings consistent

with this opinion. We do not retain jurisdiction.

 12
 A-3379-14T4